## City of Philadelphia *versus* Cooke.

The city of Philadelphia filed a claim against a lot of ground for water pipes laid in front of the premises; the land was then sold by the sheriff for arrears of ground-rent, whereby the lien of the municipal claim was discharged; but the sheriff applied the proceeds to the payment of junior encumbrances; a subsequent owner, under the purchaser at sheriff's sale, being desirous of introducing water into the premises, applied for a permit, which was refused until payment of the municipal claim; the plaintiff paid the claim, received the water, and brought suit to recover back the amount: *Held*, that the payment was not made under duress, and that the action would not lie.

A sale by the sheriff for a sum more than sufficient to pay the amount of a municipal claim is a discharge of the *lien*.

But it is not a discharge of the *debt*, unless actually paid over by the sheriff to the parties entitled to receive it.

Gormley's Appeal, 3 *Casey* 49, qualified.

ERROR to the District Court of *Philadelphia*.

This was an action of *assumpsit* by Thomas J. Cooke against The City of Philadelphia, to recover back a sum of money paid, as he alleged, under coercion, for water pipes, in front of a lot of ground of which he was the owner.

The district of Kensington, on the 27th June 1852, filed a claim for $131, against the heirs of Ward, for water pipes laid in front of a lot of ground on Queen street. The pipes were stated therein to have been laid on the 4th January 1852.

The lot was subject to two mortgages, dated respectively the 18th June and 8th July 1847. On the 3d May 1852, it was sold at sheriff's sale for $3250, to Theodore Cuyler, under a judgment for arrears of ground-rent; and the sheriff distributed the fund to the ground landlord and the two mortgages, leaving nothing for the municipal claim, which had not then been filed of record.

The plaintiff below traced his title regularly from the purchaser at the sheriff's sale; and in 1856, being desirous of introducing the water into the premises, he applied for a permit, at the Water Department of the city of Philadelphia, but was told it could not

[City of Philadelphia *v.* Cooke.]

be granted until payment was made of the claim which had been filed by the district of Kensington, and which, by consolidation, had become the property of the city. The plaintiff paid the claim, received the water, and brought this suit against the city, to recover back the amount.

The defendants, on the trial, submitted the following points of law, upon which they requested the court to charge the jury :

1. The entire fund arising from the sheriff's sale, being applicable to the prior ground-rent and mortgages, and having been actually so applied, no adequate fund was raised by the sheriff's sale for the payment of the claim for water pipes, and the lien thereof was not thereby discharged.

2. The payment of the claim, if a mistake at all, was one of law, and the amount is not therefore recoverable back.

3. Independently of the question of lien, the city of Philadelphia has the right to say, and, by ordinance, has said, that water shall not be introduced until the amount of water pipe has been paid.

They also gave in evidence the following section of an ordinance of 29th January 1855 :

" Section 2. That no permit for the use of water shall be issued, unless at the time of the application, the person or persons shall exhibit the receipt of the proper officer for the amount of assessment or other satisfactory evidence of the payment thereof, for the expense of laying the water pipe on the premises for which the permit is requested."

The judge reserved the points of law submitted by the defendants and charged the jury as follows :—" The question for the jury is, whether this payment was made under coercion of the threat, that the plaintiff should not have the water without making the payment."

The jury found a verdict for the plaintiff for $217.32, subject to the opinion of the court on the points, reserved.

The court in banc subsequently gave judgment for the plaintiff on the reserved points, and the following opinion was delivered by

SHARSWOOD, P. J.—" This case comes up upon reserved points. The facts are, that the late Kensington district had a claim for water pipe laid in front of plaintiff's premises, filed June 27th, 1852. The work was done January 4th, 1852. The property was sold by the sheriff May 3d, 1852, and the fund being brought into Court, was distributed and paid to mortgages of the year 1847. The plaintiff claimed under the sheriff's deed; and having occasion to introduce the water into his premises, he applied to the proper department of the city corporation for that privilege. He was told that he could not have the water unless he discharged this claim for water pipe. Under the coercion of that threat, as the jury have found, he paid the money, and now seeks to recover it back in this suit.

[City of Philadelphia *v.* Cooke.]

"We think that the lien of this claim for water pipe was discharged by the sheriff's sale. The case of Northern Liberties *v.* Swain, 1 *Harris* 113, as far as the opinion of the Supreme Court upon a point not directly before them can be, is an express authority to the point. The counsel for defendant suppose that the Act of 11th March 1846, ought now to rule the point differently. But all that the act of 1846 does, is to save the lien of a municipal claim where the fund is insufficient to pay it, and only to the extent that it is insufficient. By legislation and *judicial* construction, it is settled that liens for taxes and municipal charges take precedence of all other encumbrances, whether before or after the time when they accrue. The lien, however, of a first mortgage, is preserved notwithstanding the existence of such a claim, whenever a sheriff's sale under a claim or encumbrance subsequent to it in date takes place. Upon the sale of the equity of redemption in such a case the municipal claim comes in upon the proceeds, and so far, and only so far, as they are sufficient to pay, it is discharged. It is still a lien, however, having precedency over any mortgage or encumbrance prior in date until it is paid. If the whole estate is turned into money by a sale upon the first mortgage, or as here, upon a judgment for arrears of a ground-rent prior in date to the mortgages, it is entitled still to be paid first out of the proceeds. In other words, as expressly held in Perry *v.* Brinton, 1 *Harris* 202, the Act of the 11th April 1835, does not operate to impair the priority of liens for taxes and municipal charges, but only to save the lien of a mortgage from being discharged by a sheriff's sale in consequence of such lien; and so far from supposing that the Act of March 11, 1846, had altered the law in this respect, Judge Bell argues from it as confirmatory of that conclusion.

"The fund then produced by the sheriff's sale in this case was applicable to the payment of this lien. The district of Kensington was thrown upon this fund, and having neglected to make her claim, not only is the lien discharged, but the claim is in law paid. The Bank of Pennsylvania *v.* Winger, 1 *Rawle* 295, and Finney's Administrators *v.* The Commonwealth, 1 *P. R.* 240, are full up to that point. The 2d section of the ordinance, January 29, 1855, does not, therefore, apply (*Dig.* 673). It provides 'that no permit for the use of water, shall be issued, unless at the time of the application the person or persons shall exhibit the receipt of the proper officer for the amount of assessment or *other satisfactory evidence of the payment thereof*, for the expense of laying the water pipe on the premises for which the permit is requested.' The plaintiff might have produced such evidence. The sheriff's vendee had paid the full amount of this claim for laying pipes into the hands of the sheriff, and the sheriff was in that case the proper officer to receive it, and the debt was paid thenceforth as

[City of Philadelphia v. Cooke.]

truly as if it had been paid to the treasurer of Kensington district. If, through the supineness of its agents, the district never got the money, the sheriff's vendee or those claiming under him are no more to suffer, than if, after a payment to a treasurer or other tax collector, the money should never actually come to the use of the public.

"It is argued, however, that this money, if paid under a mistake at all, was paid under a mistake of law and not of fact, and, therefore, cannot be recovered back. It is true that the authorities are so. Carson v. McFarland, 2 *Rawle* 118; Ege v. Koontz, 3 *Barr* 109. But in these cases the party to whom the money was paid, might in good conscience retain it. If payment was in fact made to a creditor, and the debtor under a mistaken idea that the first payment was a bad one, should pay it a second time, the cases hardly go so far as to say that such second payment could not be recovered back. Bise v. Dickerson, 1 *T. R.* 285, was a payment made with a full knowledge of the facts; and there are not wanting American cases which recognise this very distinction; Northrop v. Graves, 19 *Conn.* 548; Culbreath v. Culbreath, 7 *Georgia* 64; and I can find no case in Pennsylvania inconsistent with it.

"But suppose this point to be as contended for by defendants' counsel, was this payment a voluntary one? The jury have found that it was made under the coercion of a declaration, that unless he paid it, he should not have the privilege of the use of water. The plaintiff was under no moral or legal obligation to pay. The defendants had neither legal or moral title to receive what a former owner had actually paid to the officer of the law, and which they, by the supineness of their officers, had lost. The property in question was a mill about to be started: the use of the water essential to carrying it on. To wait until the question as to the liability of the property was settled by legal proceedings, would be a serious and irreparable loss to the plaintiff, even if he could himself bring it to a decision. It is true, there are cases which say that there must be an actual distress of goods to make a payment involuntary; a mere threat is not enough. This is a sound rule as between private persons. But in the case of a man dealing with a public officer, the rule ought to be different. It has been held that payment to a collector of taxes who has a tax bill and warrant for levying the same in the form prescribed by law, is not a voluntary but a compulsory payment; and if the tax so paid be illegally assessed, it may be recovered back: Joyse v. Third School District, 6 *Cushing* 567. The same question passed *sub silentio* in the Bridge Co. v. Frailey, 13 *S. & R.* 422; Commissioners of Erie v. Dobbins, 7 *Watts* 513, which were actions to recover back taxes actually paid, on the ground that they were illegally assessed. We think there was no error in submitting to

the jury the precise question which was submitted, viz: Whether the payment was made under coercion of the threat that plaintiff should not have the water without making the payment. Rule discharged, and judgment for plaintiff."

The defendants sued out this writ to reverse the judgment, and assigned for error, the refusal of the court to charge as requested in the points submitted on the trial.

*Hirst* and *Ashmead*, for plaintiffs in error.—The act 11th March 1846, *Brightly's Purd.* 606, provides that the lien of municipal claims shall not be divested by any judicial sale, as respects so much thereof, as the proceeds of sale may be insufficient to discharge and pay. Here the ground-rent and mortgages were prior liens and the fund was rightly applied to them by the sheriff: Gormley's Appeal, 3 *Casey* 49.

The payment of the claim, if a mistake at all, was one of law, and the money is not recoverable back: Carson *v.* McFarland, 2 *Rawle* 118; Ege *v.* Koontz, 3 *Barr* 109; Morris *v.* Tarin, 1 *Dall.* 148; Bogart *v.* Nevins, 6 *S. & R.* 369; Irvine *v.* Hanlin, 10 *S. & R.* 219; Espy *v.* Allison, 9 *Watts* 462; Mann's Appeal, 1 *Barr* 24.

But, independently of the question of lien, the city has the right to provide by ordinance, that water shall not be introduced until the pipes are paid for. Such right is absolutely necessary to its welfare. This was done by ordinance of 29th January 1855; *Dig. City Ord.* 673.

*E. Spencer Miller*, for defendant in error.—The claim, payment of which was coerced, was no lien, having been discharged, and, in law, paid by the sheriff's sale: Perry *v.* Brinton, 1 *Harris* 206; Gormley's Appeal, 3 *Casey* 51; Benner *v.* Phillips, 9 *W. & S.* 21.

The ordinance was passed after the filing of the claim and the sheriff's sale, and could have had no effect. No ordinance could be passed to coerce the payment of what had been already paid.

The cases fully establish that a sum not due paid under duress of person or property, may be recovered back: Caldwell *v.* Moore, 1 *Jones* 58; Lewis *v.* Hammond, 2 *B. & Ald.* 208; Waterhouse *v.* Keene, 4 *B. & Cress.* 200; *Addison on Contracts* 63–4; Irving *v.* Wilson, 4 *T. R.* 485; Umphelly *v.* Maclean, 1 *B. & Ald.* 42; Atlee *v.* Backhouse, 3 *M. & W.* 646; Boston and Sandwich Glass Company *v.* Boston, 4 *Met.* 481; Shaw *v.* Becket, 7 *Cush.* 442; Fleetwood *v.* The City, 2 *Sandford* 475; and the cases cited by the court below.

The opinion of the court was delivered by

STRONG, J.—If it be admitted that the lien of the municipal

[City of Philadelphia v. Cooke.]

claim was discharged by the judicial sale for arrears of ground-rent, still there had been no actual payment of the debt due the city, when Cooke applied for the use of the water. How can it then be said to be inequitable that the city should retain the money which he paid in discharge of the claim? It was but the satisfaction of a just debt never before satisfied. Money paid by mistake cannot be recovered back, unless its retention be against equity and good conscience. This is not a case of double payment where it is clearly inequitable for the creditor to retain the duplicate satisfaction. If paid under a mistake at all, Cooke's mistake was that he was liable to pay instead of the sheriff, who sold the property upon which the claim was a lien. That was a mistake of law, not of fact, and affords no right of action.

But it is said, the payment was made under coercion, and so the jury have found. Their verdict has, however, defined what the coercion was. It was a threat that Cooke should not have the water until he paid the claim for the water pipes. Payment under duress is undoubtedly not voluntary. But is such a threat, if threat it can be called, duress? Certainly not, unless the city had no right to impose terms upon its grants of water privileges. Water and air are indeed things of common right; but the privilege of receiving them through pipes is property, and may not be demanded as an unfettered right, either from the state or from a municipal corporation created by the state. Why was not the payment then a voluntary one? It is no answer to say that want of the water would have been a great inconvenience. So would the want of a loaf of bread be, if a baker should demand three prices. A payment is not the less voluntary because it is a hardship to demand it.

The plaintiff below paid on demand, without protest against the right of the city to claim. If the demand be considered as having been made by a public officer acting in a public character, then the absence of a protest is fatal to the attempt to treat this as an involuntary payment. Such the court below seem to have considered it. But in the Borough of Allentown v. Saeger, 8 *Harris* 421, it was held that the illegal part of a borough tax, part of which was legal and part illegal, paid by a person assessed without protest, or notice at the time that he would reclaim the part illegally assessed, cannot be recovered back. In that case a protest was regarded as something more than mere evidence of coercion. Without it, the payment was treated as a voluntary assent to pay more than the town had a right to demand, and it was declared that the law did not imply the duty of refunding. The language of Judge HUSTON, in 7 *Watts* 514, Commissioners v. Dobbins, is to the same effect, though the question was only incidentally mooted in the case. The cases of Henry v. Horstick, 9 *Watts* 412, and Caldwell v. Moore, 1 *Jones* 58, are not in conflict

[City of Philadelphia *v.* Cooke.]

with this view. In both, the property of the persons who paid the tax was chargeable, and the claim for reimbursement was not against the government, but against the individuals who were primarily liable for the tax.

It will be perceived, from this view of the case, that we are of opinion the plaintiff below was not entitled to recover, and the judgment must therefore be reversed.

For the purposes of this case nothing more is needed; but as the Act of Assembly requires us to file an opinion upon every point of law raised in the court below, we have yet to consider the effect of the sheriff's sale of the lot against which the municipal claim was filed. The defendant in error contends that it discharged the lien of the claim for water pipes; that the claim was payable out of the proceeds of sale in preference to the mortgages; and therefore that the debt due to the city was constructively paid, although the whole of the money raised by the sale was actually applied to the satisfaction of the ground-rent and mortgages. We think the court below correctly ruled that the lien of the claim was discharged by the judicial sale, and that the municipal assessment was entitled to payment out of the proceeds in preference to the mortgages, and we think so, notwithstanding Gormley's Appeal, 3 *Casey* 49. That was a case of attempted subrogation, which was denied, because its allowance would have imposed the taxes upon one who was not liable for them. No more is decided in the case. The casual observations by the judge who delivered the opinion of the court respecting the priority of liens for taxes, were outside the case, and occasioned by inadvertently overlooking the positive provisions of the Act of Assembly.

But if the lien was discharged, and if the city had a right to receive the amount from the sheriff superior to that of the mortgages, it is still difficult to perceive how such right can be considered a constructive payment. The sheriff is no more the agent of the creditor to receive, than he is of the debtor to pay. A mere receipt by the sheriff of the proceeds of sale of real estate not sold at the instance of the creditor, does not discharge the debt, though it may its lien. A creditor, whose judgment is the first lien upon two tracts of land, may permit the purchase-money of one to be applied to the payment of junior lien creditors, and yet claim his whole debt out of the proceeds of a subsequent sale of the other: Addams *v.* Heffernan, 9 *Watts* 529. This would be impossible, if the first sale constructively paid the debt.

Judgment reversed and a *venire de novo* awarded.