## Safe Deposit & Trust Company, Appellant, *v.* Mehaffey.

*Equity—Jurisdiction—Accounting—Injunction—Remedy at law.*

A court of equity will not decree an injunction to restrain the mining of coal or an accounting as to coal already mined where the bill shows that no mining has been done for a considerable time and the answer and testimony show that none will be done in the future and where the account demanded is a mere matter of charge with no entries on the other side.

Argued Nov. 4, 1909. Appeal, No. 211, Oct. T., 1909, by plaintiffs, from decree of C. P. No. 2, Allegheny Co., July T., 1907, No. 288, on bill in equity in case of the Safe Deposit & Trust Company of Pittsburg, Trustee under the Will of Alexander Mehaffey, deceased, v. Elizabeth Mehaffey, Executrix and Sole Devisee of the Estate of Charles Mehaffey, deceased, and Elizabeth Mehaffey and Harry W. Hammer et al., partners doing business as Mehaffey Brothers, and H. W. Hammer, manager. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction and accounting.

FRAZER, P. J., filed the following opinion:

The purpose of the bill in this case was to enjoin defendants from mining coal underlying a farm in North Versailles township, and also to compel an accounting to plaintiffs for coal heretofore mined and sold, and timber removed from the farm in question. From the bill, answer and proofs, we find the following facts:

### FINDINGS OF FACT.

1. Alexander Mehaffey died March 24, 1886, testate, seized of a farm situate in North Versailles township, containing 140 acres. By his will, dated October 24, 1882, the farm referred to, "except the merchantable coal lying thereunder west of the

center line of the Township road laid out through the farm,"
was devised to James Evans, trustee, to receive the rents and
pay the same to testator's son, Charles, or his appointee, or at
the option of the trustee to permit the son to keep and enjoy
the farm during the full term of his natural life, for his own
separate use, and not to be liable for his debts, contracts or en-
gagements, the son to pay the taxes exclusive of those on the
coal, and make needed repairs and improvements. Upon the
death of Charles Mehaffey, the trustee was to hold the farm,
exclusive of the coal mentioned for the use of his wife, Eliza-
beth, upon the same uses and terms, and without any liability
for any debts which she may contract; upon the marriage or
death of Elizabeth Mehaffey, the trustee was to hold the farm,
exclusive of the coal, for the use and benefit of the heirs and
legal representatives of Charles Mehaffey, their heirs and as-
signs. The will also authorized and empowered the executors
of testator to sell and dispose of the coal underlying his farms
in Allegheny and Westmoreland counties, and reserved as
above stated, as soon after his death as in the judgment of the
trustee full and fair prices can be had for the same, the pro-
ceeds of such sale to be disposed of in accordance with the in-
structions contained in the will.

2. James Evans, the trustee, resigned his trust and the Safe
Deposit & Trust Company of Pittsburg was appointed his suc-
cessor on June 2, 1898.

3. By option and permission of the trustee, Charles Mehaf-
fey occupied the farm from the death of Alexander Mehaffey
until the death of Charles on January 13, 1906, and since that
date, Elizabeth Mehaffey has had possession thereof, and
resided thereon. Charles Mehaffey died testate, and by his
will appointed his wife, Elizabeth Mehaffey, his executrix, and
gave, devised and bequeathed to her all his property.

4. Charles Mehaffey left surviving him as heirs at law,
Elizabeth Mehaffey, widow, and the following children: Sarah
Taylor, James Mehaffey, Frank Mchaffey, John Mehaffey,
Charles Mehaffey, Joseph Mehaffey and Clyde Mchaffey; all of
whom are at this time of full age. Harry W. Hammer, one of
the defendants, is the son of Elizabeth Mehaffey by a former

husband, and a half-brother of the remainder-men named above.

5. This bill was filed April 22, 1907, against Elizabeth Mehaffey as executrix and sole devisee of Charles Mehaffey, and Elizabeth Mehaffey, and Harry W. Hammer, James Mehaffey, Frank Mehaffey and Clyde Mehaffey, partners doing business as Mehaffey Brothers, and W. H. Hammer, manager. About sixteen years ago and during his lifetime, Charles Mehaffey made a verbal contract with Harry W. Hammer, one of the defendants, whereby the latter was to open a coal mine on the farm west of the center line of the Township road, and to mine and sell the coal therefrom, and pay to his stepfather a royalty of one cent per bushel for clean coal, and three-fourths of a cent per bushel for run-of-mine coal, Charles Mehaffey to find timber for pit-posts, and Hammer to pay for making them. Under this contract a mine was opened and Hammer from time to time took out and sold approximately six and one-half acres of coal, the greater part of which was taken out more than six years ago, and the total amount mined aggregated about 625,000 bushels. Such timber as was required for pit-posts in the mine was cut on the farm, the amount taken aggregating about five acres, worth $60.00 per acre.

7. Charles Mehaffey built and constructed at the mouth of the pit, a platform and weigh-shanty, and Hammer constructed a tipple. These buildings have been reconstructed from time to time, and remain upon the property.

8. The mining of the coal and cutting of timber was done openly, and so far as Hammer was concerned was done in good faith without knowledge on his part that Charles Mehaffey did not own the farm and coal, and he accounted to Mehaffey for all coal mined and paid him therefor, and has not made any payment on account of mining such coal, to either the trustee or any of the remainder-men. The fact that coal was being mined from the farm was known to James Evans, trustee, who made no objection. The mining was also known to the children of Charles Mehaffey, all of whom, with the exception of James Mehaffey, and Sarah Taylor, worked in the mine and cut timber from the farm for use in the mine. No objection

was made by anyone to the coal being mined and sold, nor was any demand made upon Hammer for an accounting, until November 27, 1905, when the following notice was served on him:

"McKeesport, Pa.,

"November 23, 1905.

"Mr. H. W. Hammer,

　"North Versailles Township, Pa.

"Sir:—

　"You are hereby notified and required to at once cease further operations in the sale and mining of coal in, under and upon the premises lately owned by Alexander Mehaffey, deceased; and also to account within ten days from date hereof, to the Safe Deposit & Trust Company of Pittsburg, Pa., Trustee, for all coal mined by you upon the Easterly side of the Township Road of such tract, otherwise we will proceed against you according to law.

"John Mehaffey,

"Joseph Mehaffey,

"Charles E. Mehaffey,

"Remainder-men."

9. On February 6, 1905, Hammer purchased from Charles Mehaffey about two and one-fourth acres of the Mehaffey coal lying west of the center line of the Township road, for the consideration of $1,200 and received a deed therefore, made by Mehaffey and his wife, Elizabeth, dated February 6, 1905, and recorded May 10, 1905, the consideration being paid to Charles Mehaffey in full by Hammer. Subsequently, Hammer took out from this tract, twenty-seven wagon loads of coal, and on receipt of the notice of November 23, 1905, immediately ceased operations in any of the Mehaffey coal, and consulted his attorney who advised him not to mine further. From the date of that notice, Hammer did not mine or remove any of the Mehaffey coal, nor has any of it been mined since that time by any other person.

10. In 1901, Hammer purchased the Hickman coal, which adjoins the Mehaffey coal, and thereupon began mining and

removing the same through the entry of the Mehaffey mine, and continued to do so until the bill in this case was filed, whereupon he ceased to use the Mehaffey entry and opened another entry through which he removed the Hickman coal without entering upon the Mehaffey coal or using the entry through it. The Hickman coal was an abandoned mine at the time at which Hammer purchased it. After obtaining the coal, Hammer made several openings connecting the Mehaffey mine with the Hickman mine. The Hickman coal lay higher than the Mehaffey coal, which caused water gathered in the Hickman mine to percolate through the coal in place on the dividing line between the two farms, into the Mehaffey mine. To avoid such accumulation of water and prevent it flowing into the Mehaffey mine, Hammer at an expense of $400 constructed an outlet by tunneling from a water course into which the Mehaffey mine drained, thus providing a drain through which the water of both mines was carried off. The roofs of two of the rooms of the Mehaffey mine from which the coal has been removed, have fallen in, rendering access to these rooms impossible except to a short distance. With this exception the mine is in fairly good condition and could be made fit for working within a few days by the expenditure of a very small sum of money.

11. The testimony of plaintiff indicated that there were depressions upon the surface of the Mehaffey farm at certain points where the coal had been removed, that at the time the bill in this case was filed, the wall of the barn had fallen down in part, and the barn had moved a few inches on its foundation, and also that the fences upon the farm were not in good condition, and that fences separating fields had been removed. As respects the depression, they showed themselves on the surface a number of years ago during the lifetime of Charles Mehaffey. The surface on and over all of the depressions, with one exception, is susceptible to cultivation and had been cultivated. With respect to the depression not cultivated, the testimony showed that it could be plowed over at any time and made tillable. The break in the wall of the barn has been properly repaired by Elizabeth Mehaffey, the life tenant, and

the barn straightened, so that it is at the present time in good condition. The fencing at the present time is also in good condition. While it is true one or two fences separating fields have been removed, such removal became necessary in the working of the farm, and cannot be considered waste, the testimony indicating that the change in the lines of fields was for the advantage of the farm. The present condition of the farm is good and equal to the general condition of farms of like character in that neighborhood.

12. None of the defendants had anything to do with, or are liable for the cutting of timber from the farm, or the mining of coal from it, or the depressions resulting therefrom, except Harry W. Hammer. Nor did any of them, except Elizabeth Mehaffey, have anything to do with the permissive waste.

13. In 1891, Harry W. Hammer was twenty-seven years of age, and John Mehaffey, Charles Mehaffey and Joseph Mehaffey, three of the remainder-men were all minors, their ages being respectively fourteen, twelve and nine years.

### CONCLUSIONS OF LAW.

The bill asks that defendants be restrained from further operating the mine on the Mehaffey farm and mining coal therefrom and also asks that they be compelled to account for the coal taken therefrom under the verbal contract with Charles Mehaffey, the life tenant. There seems to be no necessity for an injunction as the bill shows that no mining has been done on the premises since November 23, 1905, and the answer and testimony show that none will be done in the future. Under these facts a case for equitable relief is not made out in this respect. As to plaintiffs' right to an accounting in this proceeding, we are of opinion they have not shown such conditions as to entitle them to have the amount, if any, due them ascertained here. That matter seems to us to be clearly a matter for determination in an action at law. The account is a mere matter of charge with no entries on the other side, at least none shown by the testimony now before us. Under these circumstances defendants are, in our opinion, entitled to have that matter settled according to the rules of law, and

especially is such the case under the circumstances here, where the death of Charles Mehaffey, the statute of limitations, the laches of plaintiff and also the relations existing between the parties at the time will have a great if not a controlling bearing upon the controversy. As we view the case, there is very little equity in favor of plaintiff. Hammer, the real defendant, acted in good faith in making the contract with his stepfather for taking out the coal, and in preparing to do so he was assisted if not controlled by his stepfather. And after the mine was open, he gave employment from time to time to all his stepbrothers, the remainder-men, except one, and he paid to his stepfather a fair and reasonable price for every ton of coal mined. The trustee and several of the remainder-men, who have been of age for many years stood by and without objection permitted defendant to take out the coal and make payments to Charles Mehaffey during his lifetime, and now that the life tenant is dead and many years have intervened since the waste complained of was committed, if there is any advantage to defendant by a proceeding at law, he is entitled to that benefit. While we are of opinion that the bill might be dismissed without detriment to plaintiff, we will retain it, with leave to plaintiff to move for an injunction should defendants at any time disregard their avowed intentions not to further mine coal from the premises. The prayer for an accounting is refused, without prejudice, however, to plaintiff to institute and prosecute any proceedings at law they may deem necessary to recover any sum or sums that may be due them on account of the injury complained of in the bill.

*Error assigned* was the decree of the court.

*G. W. Williams,* with him *Patterson, Sterrett & Acheson* and *W. S. Woods,* for appellant.

*W. B. Rodgers,* with him *G. A. Johnson,* for appellees.

Per Curiam, January 3, 1910:

The decree is affirmed on the opinion of the learned president judge of the common pleas.