# Shenango Furnace Company *v.* Fairfield Township, Appellant.

*Taxation—Road taxes—Levy—Valuation—Act of April 12, 1905, P. L. 142—Equity—Jurisdiction.*

1. A levy for road taxes made by the supervisors of a township on the first Monday of March must be made on the adjusted valuation of the preceding year, if an adjusted valuation has not been made by the board of revision for the current year.

2. A court of equity has jurisdiction to restrain the supervisors of a township from levying a road tax on a valuation of property which is not "the last adjusted valuation for county purposes," as provided by the Act of April 12, 1905, P. L. 142.

3. While equity will enjoin the collection of a road tax levied on a wrong valuation, it will not compel the refunding of the tax if it has been paid.

*Equity—Mistake—Ignorance—Refunding taxes—Taxation—Accounting.*

4. Mistake, as a basis in equity for refunding taxes, is a misapprehension or misunderstanding arising from ignorance, an essential prerequisite, and is distinguished from that inattention or absence of thought which are inherent in negligence, and is not such as results from inadvertence or negligence.

5. A bill in equity against a township to compel the refunding of taxes alleged to have been paid by mistake, and for an accounting, cannot be maintained where no accounting is necessary.   The fact that the bill prays for an accounting does not under such circumstances give the court jurisdiction, inasmuch as the accounting is merely incidental, and of no importance in the case.

*Payment—Voluntary payment—Repayment of taxes—Evidence.*

6. Where taxes have been voluntarily paid to the public authorities without any duress or threats or misstatements by any public officer,

and without any protest by the party paying them or notice of an intention to reclaim any part of the sum paid, such taxes cannot be recovered back.

*Equity—Mistake—Taxation—Refunding taxes—Referee's findings of facts—Evidence—Review of findings.*

7. On a bill in equity against a township to compel the repayment of road taxes alleged to have been paid by a corporation by mistake, a finding of fact by a referee although confirmed by the court below that the taxes had been paid by mistake, will be reversed by the Supreme Court, where the evidence shows that the vice president of the corporation, who had entire charge of the payment of the taxes and who ordered the payment was informed of every step in regard to the assessment, fixing of the rate and the payment of the tax, that he directed the policy of the company as to the payment of the tax, that he knew that it was the policy of the company to resist the payment of the tax, and that he wrote a letter dated after the payment showing that at that time the company had no intention of contesting the amount of road taxes on the ground taken in the bill filed.

Argued Oct. 4, 1910. Appeal, No. 118, Oct. T., 1910, by defendants, from decree of C. P. Westmoreland Co., No. 633 Equity, on bill in equity in case of Shenango Furnace Company v. The Township of Fairfield and C. A. Hamill, collector of taxes. Before Fell, C. J., Brown, Mestrezat, Potter, Elkin, Stewart and Moschzisker, JJ. Decree modified.

Bill in equity for an injunction, an accounting and for a refunding of taxes alleged to have been paid by mistake. Before Doty, P. J.

The case was referred to M. N. McGeary, Esq., as referee whose findings of fact and of law were as follows:

### FINDINGS OF FACT.

1. That the Shenango Furnace Company, plaintiff, is a corporation of the state of Pennsylvania, and is engaged in the mining of coal and the sale thereof, and is the owner of real estate and personal property situate in said township of Fairfield, Westmoreland county, Pennsylvania.

2. The said township of Fairfield, one of the defendants, is one of the territorial subdivisions of said county

of Westmoreland, with such power and authority as is usually given to townships for the purpose of the assessment and collection of taxes for road purposes; and the said C. A. Hamill, the other defendant, is the duly qualified collector of taxes in said township, or at least was such collector at the time of the filing and service of the bill.

3. That the valuation of the property of plaintiff for the year 1906 was $19,400, which was the last preceding adjusted valuation furnished to the road supervisors of said township prior to July 1, 1907, and that in accordance with the requirements of law, the road supervisors of said township during the month of March, in the year 1907, levied a road tax in said township, on all taxable property therein for road purposes at the rate of eight mills.

4. Pursuant to the Act of assembly approved April 12, 1905, P. L. 142, providing, among other things, for the levying and collection of road taxes, and with intent to secure the benefit of the provisions of said statute with regard to the discount therein provided for payment prior to June 1 in any year, the plaintiff tendered to S. T. Ford, treasurer of said township, defendant, on May 31, 1907, the sum of $156.20, which was the amount of road tax due from plaintiff after adding thereto $1.00 personal tax, being the amount due according to said valuation and according to said millage; and the said treasurer thereupon refused to accept said tender. At the time of said tender the said treasurer had not received his duplicate and advised the agent of plaintiff making the tender that he had no authority to receive any taxes, or at least that he had no taxes against plaintiff. The plaintiff has, since the tender, been ready and willing to pay said sum of $156.20.

5. Although the assessor for the said township of Fairfield had made and returned a valuation for the purpose of taxation to the county commissioners for the triennial year 1907, prior to February 15, 1907, and on said date

of February 15, 1907, the commissioners changed the valuation of the coal of plaintiff per acre, as returned by the assessor, and fixed the same at $500 per acre, and then after the appeal, which was held June 12, 1907, to wit: On June 25, 1907, reduced the same to $400 per acre, yet no adjusted valuation was made for the reason that the plaintiff appealed from the adjustment by the county commissioners to the court of common pleas to No. 548, August Term, 1907, and the court again reduced the valuation of said coal per acre to $330 per acre, thus establishing the adjusted valuation,—the decree establishing said adjustment being made December 31, 1907. However the plaintiff appealed only from the valuation of its coal as fixed by the commissioners on June 25, 1907, and therefore the adjusted valuation for 1907 of any other taxable property owned by the plaintiff in said township was made on the said date of June 25, 1907.

6. After February 15, 1907, and before March 4, 1907, the supervisors of defendant township called upon the county commissioners for the purpose of procuring the valuations for the purpose of laying the road tax. The adjusted valuations of the property of the Shenango Furnace Company for 1907, were not and could not be furnished by the commissioners for the reason that the appeals, as far as the Shenango Furnace Company was concerned, were not yet held, as aforesaid, and therefore adjusted valuations could not be made as yet; and the commissioners did not furnish to said road supervisors any adjusted valuation for county purposes for the year 1907. On March 4, 1907, the day required by law, the board of supervisors met and levied the road tax fixing a millage of eight mills as aforesaid. We find, therefore, that the road tax for defendant township was levied on March 4, 1907.

7. That the defendants claim from the plaintiff eight mills on the adjusted valuation for county purposes for the year 1907, a part probably of which valuation was adjusted by the county commissioners on June 25, 1907,

and the remaining part, to wit, the coal, was adjusted by the court on December 21, 1907.

8. That the last adjusted valuation for county purposes prior to June 25, 1907, was the adjusted valuation for the year 1906.

9. Since the county commissioners of said county have completed their adjusted valuation at the time aforesaid, and since the court of common pleas of Westmoreland county has revised the same on appeal, the said C. A. Hamill, tax collector of said township, has given notice to plaintiff based on the adjusted valuation for 1907, that plaintiff was indebted to said township in the sum of $2,091.14, and the plaintiff, in ignorance of its rights and the facts with relation to the assessment of said road tax, and by mistake and inadvertence, thereupon paid to the said C. A. Hamill, collector, the sum of $1,722.56; but the said C. A. Hamill, collector as aforesaid, has demanded $368.58, balance of the said $2,091.14, which he claims is owing for road taxes by the plaintiff for the year 1907; and the said C. A. Hamill, collector as aforesaid, one of the defendants, at the time of filing the bill of complaint, was about to proceed to collect the amount thus claimed to be due for the balance of the road tax for the year 1907.

### FINDINGS OF LAW.

1. The last adjusted valuation for county purposes as contemplated in the second section of the Act of April 12, 1905, P. L. 142, is that one furnished by the county commissioners to the road supervisors prior to the time at which the said supervisors levy the road tax for any year.

2. The road tax of eight mills which was levied by the supervisors of defendant township on March 4, 1907, was not levied on the adjusted valuation or any other valuation of plaintiff's property for the year 1907, but was levied on the adjusted valuation of plaintiff's property for the year 1906.

3. The sum of $156.20, as tendered, was the full amount of road tax owing by plaintiff to defendant for road tax

of 1907; and the plaintiff company having in ignorance of the facts and by mistake paid the sum of $1,722.56 to C. A. Hamill, collector of said defendant township, there is due and owing to the plaintiff company from the said township the difference between the said sum of $156.20 and the said sum of $1,722.56, to wit, the sum of $1,566.36.

4. The plaintiff is entitled to the relief prayed for.

Exceptions to the report of the referee were dismissed by the court, and the following decree entered:

And now, December 11, 1909, this case comes on to be heard on exceptions to the report of the referee and was argued by counsel, and upon due consideration it is ordered, adjudged and decreed as follows: That the full amount of road taxes owing by plaintiff, Shenango Furnace Company, to the defendant, the township of Fairfield, for the year of 1907, was the sum of $156.20, and the plaintiff company, having in ignorance of the facts and by mistake, paid as road taxes for the said year the sum of $1,722.56 to C. A. Hamill, collector of said taxes for said defendant township for said year, there is due and owing to the plaintiff company from the said township of Fairfield, the difference between the sum of $156.20 and the said sum of $1,722.56, to wit, the sum of $1,566.36; that the said township of Fairfield do pay to the said plaintiff, Shenango Furnace Company, the said sum of $1,566.36; the said township of Fairfield and its officers and the said C. A. Hamill, collector of road taxes for said township are hereby enjoined and restrained from the collection of any other or further road taxes from the said plaintiff for the year 1907.

*Error assigned* among others was the decree of the court.

*S. A. Kline*, with him *Wade T. Kline* and *Geo. P. Kline*, for appellants.—Mr. Dyer, the vice president of the company, upon receipt of the tax collector's notice claiming the amount of road tax, examined it, approved it, and passed it over to the accounting officers of the company for

payment, having full knowledge and information that the claim was based on the valuation of 1907. Certainly such a payment does not entitle the plaintiff company to the relief it asks for: Little v. Bowers, 134 U. S. 547 (10 Sup. Ct. Repr. 620); First Nat. Bank v. Mayor, etc., of Americus, 68 Ga. 119; Rogers v. Inhabitants of Greenbush, 58 Me. 390; Conkling v. City of Springfield, 24 N. E. Repr. 67; Bowman v. Boyd, 21 Nev. 281 (30 Pac. Repr. 823); Richardson v. City of Denver, 17 Colo. 398 (30 Pac. Repr. 333); Swift v. City of Poughkeepsie, 37 N. Y. 511; Hopkins v. City of Butte, 40 Pac. Repr. 171; Taylor v. Board of Health, 31 Pa. 73.

*Paul H. Gaither,* with him *Charles E. Whitten,* for appellee.—This case is ruled by the decision in Frick Coke Co. v. Mt. Pleasant Twp., 222 Pa. 451; Byers v. Hempfield Twp., 226 Pa. 278.

Where a court of equity acquires jurisdiction of a case for a proper purpose, it may settle other disputes between the parties, incidentally arising out of the same controversy: Bussier v. Weekey, 11 Pa. Superior Ct. 463; Penna. Co. v. R. R. Co., 204 Pa. 356.

The findings of the referee were conclusive: Brotherton Bros. v. Reynolds, 164 Pa. 134.

A payment which has been made under a mistake of fact affecting the liability of the payor may be recovered back: Meredith v. Haines, 14 W. N. C. 364.

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1911:

This is a bill filed by the plaintiff company (a) to restrain the defendants from collecting a balance of road taxes alleged to be due for the year 1907, (b) for an accounting to ascertain the amount paid by the plaintiff inadvertently and by mistake on account of such taxes in excess of the amount legally due, and (c) for a decree that defendants pay to plaintiff the amount of such excess.

The defendant township is of the second class and the

plaintiff company owns coal lands in the township, the adjusted valuation of which for 1906 was $19,400. Prior to March, 1907, the township assessor returned a valuation of the lands to the county commissioners which was very largely in excess of the valuation for 1906. The valuation so returned to the commissioners was revised and reduced by them sitting as a board of revision on June 25, 1907. From this valuation plaintiff appealed to the common pleas, which finally adjudicated the valuation in December, 1907 at $330 per acre, or $248,820 in all. On the first Monday of March, 1907, the township supervisors met and fixed the rate for road tax at eight mills for that year. At that time there was no "adjusted valuation" for 1907. On May 31, 1907, an agent of plaintiff tendered to the tax collector the sum of $156.20, being the amount of the road tax for 1907, at the rate of eight mills on the valuation for 1906. The tender was refused because, as the collector said, he had no duplicate and was without authority to receive the tax. In the early part of January, 1908, the tax collector gave the plaintiff company notice to pay taxes based upon the 1907 valuation, the sum claimed being $2,091.14, and within a few days plaintiff paid to the collector $1,722.56, being the amount claimed in the notice, less certain deductions which the plaintiff alleged should be made. Shortly after this, plaintiff demanded the refunding of all over $156.20, the amount due on the valuation for 1906. This was refused and the collector demanded the balance, $368.58; whereupon, in February, 1908, this bill was filed. An answer and replication were filed and the case was referred by agreement to a referee who recommended a decree enjoining the collection of the balance of $368.58 and directing payment to the plaintiff by defendants of $1,566.36, the difference between the amount paid by plaintiff and $156.20, the amount due on the 1906 valuation. A final decree in accordance with the referee's report was entered by the court below. The defendants have appealed.

It is conceded by the parties that under our recent rulings the levy for road taxes made by the supervisors on the first Monday of March, 1907, should have been made on the adjusted valuation for 1906, and that a court of equity has jurisdiction to restrain the collection of the $368.58, the balance claimed by the township for taxes due from the plaintiff company on the valuation of 1907.

There was sufficient evidence to warrant the court below in finding that the plaintiff tendered the sum of $156.20, on May 31, 1907, in payment of the road taxes for that year admitted to be due by the plaintiff. The fourth assignment, therefore, cannot be sustained.

In ascertaining the right of the plaintiff company to have refunded the sum of $1,566.36, taxes paid by the company on the 1907 valuation, two questions must be considered: (1) Was the payment a voluntary one in the legal sense which prevents its recovery back, and (2) was it made under such mistake or ignorance of facts that the plaintiff is entitled to have the money repaid.

1. Was the payment of the money, under the facts of the case, voluntarily made by the plaintiff so that he, for this reason, is not entitled to have it refunded? This question is settled by a long line of decisions in this state and, hence, we are not required to treat or consider it as one of first impression. C. P. Dyer, the vice president of the plaintiff company and authorized to act for it in the matter, directed the payment to be made by the proper officer of the company. While testifying at length in the case, the facts found by the learned referee and the court below being based upon his testimony, he does not even suggest that any official of the defendant township at any time ever threatened to resort to legal process for the collection of the taxes, or exacted them by duress, or went beyond making a demand for their payment, or did any act by which the plaintiff was misled. Neither does it appear by the evidence nor is it claimed by Mr. Dyer or any other representative of the plaintiff company that it made the payment under protest or with notice

of an intention to reclaim any part of the sum paid. The case is entirely barren of any such facts, and it is, therefore, clear that under the settled law of this state the payment was voluntary and not such as to justify the plaintiff in demanding the repayment of the money.

In Lackey v. Mercer County, 9 Pa. 318, a donation tract of land was sold by the county to the plaintiff for taxes. He entered and improved the land which was subsequently recovered by the donee. While in possession, the plaintiff paid the taxes assessed against the land, and after he was ousted, he brought an action to recover the amount paid by him on a void assessment, the land being exempt from taxes. The court entered judgment on a case stated for the county. GIBSON, C. J., in affirming the judgment said: "A single fact in the cause turns the scale against the plaintiff—the payment was voluntary. The cases agree that a party who has paid an unfounded demand without constraint, cannot recover it back: it was his folly to part with his money, and he must submit to lose it. . . . The taxes were assessed and the plaintiff paid them, . . . . without objection, when the collector called on him, and without warning to the county that the money would be reclaimed. There could not be a more bald case of voluntary payment. His course was to appeal from the assessor to the county commissioners, and, if they would not exonerate him, stand a distress and sale, for which he would infallibly have recovered by action of trespass. . . . Independently of that (a proper contribution to the public treasury), however, a sufficient answer to his action is the fact that he made it without compulsion."

Allentown Borough v. Saeger, 20 Pa. 421, was an action to recover back the amount of taxes illegally assessed by the borough on moneys at interest and paid to the tax collector. In reversing a judgment for the plaintiff this court, by LOWRIE, J., said: "Part of the taxes charged against Saeger was legal and part illegal, and he paid the whole on demand, and now seeks to recover

back the part that was illegally assessed. It cannot be allowed. The case is very different from that of payment to an individual by mistake. It was submission to legitimate authority which was prima facie right in its exercise. The taxing officers performed their duty as well as they knew how, and the tax was submitted to by one who was interested in the purposes for which it was raised, though it might have been resisted in legal form. This was an assent to pay more in support of the government of the town than the town had a right to demand, and the law does not imply the duty of refunding. If it had been paid under protest, that is, with notice that he would claim it back, this would repel the implication of an assent, and give rise to the right of reclamation. In another aspect it is unlike to a payment to an individual. It is a contribution to a common fund, in the benefits of which he, as a citizen or property-holder, participates. It is intended for immediate expenditure for the common good, and it would be unjust to require its repayment, after it has been thus, in whole or in part, properly expended, which would often be the case if suit could be brought for its recovery without notice having been given at the time of payment; and there would be no bar against its insidious spring but the statute of limitations. On these principles the defendant below is entitled to the judgment."

In Taylor v. Board of Health, 31 Pa. 73, the Philadelphia board of health collected a state tax of $1.00 a head on immigrants and the plaintiff, the consignee of passenger ships, paid this tax during six years. It was then held that the tax was unconstitutional, and the plaintiff sued to recover the money he had paid. In affirming a judgment for the defendant, this court, by LOWRIE, J., said (p. 74): "If the case of the Borough of Allentown v. Saeger was decided upon a proper principle, then the judgment . . . . is very plainly right. In that case the taxing officers had no authority at all for imposing the tax complained of, and, as it was paid without objection,

it was presumed to have been expended for public purposes, and held to be irrevocable from the district whose officers imposed it. In the present case, . . . . the plaintiff seeks to recover back the taxes voluntarily paid by him. We state the case as one of a voluntary payment of taxes, because there is no pretense that the defendant's officers did any more than demand the tax under a supposed authority of law; and this is no more a compulsion than when an individual demands a supposed right. The threat that is supposed to underlie such demands is a legally harmless one; that, in case of refusal, the appropriate legal remedies will be resorted to."

In Union Insurance Co. v. Allegheny, 101 Pa. 250, the sheriff's vendee of land paid under protest municipal taxes assessed against him before the sheriff's sale. Judgments had been entered for the taxes after the sale but their lien had been discharged by the sale. The city solicitor demanded payment with threat to proceed to enforce payment by sale. The court entered judgment for the city which was affirmed by this court in an opinion by Mr. Justice MERCUR who reviews the authorities on the subject, and says, inter alia (p. 257): "By application to the equitable powers of the court or by bill in equity execution might have been stayed, and the claim removed from the record. No immediate and urgent necessity existed for the payment of the taxes to protect the property of the plaintiffs. Its goods were not about to be seized."

In Peebles v. Pittsburg, 101 Pa. 304, municipal assessments were levied on plaintiff's property and he paid on notice that if they were not paid in thirty days they would be collected by process of law. He paid under protest with notice that if not legally liable he would seek to recover them back. Later the act under which the assessments were made was held unconstitutional, and he brought assumpsit to recover the sum paid. In affirming a judgment for the defendant this court, by GREEN, J., said (p. 308): "The payments were not com-

pulsory. They were not made under any duress of person or goods, or under any impending danger of seizure or sale of property. . . . In the latter case (Allentown Boro. v. Saeger, 20 Pa. 421), the money was paid to an ordinary tax collector, who, it must be supposed, was armed with a warrant in the usual manner. . . . It is worthy of remark that in the case just referred to (Union Pacific R. R. Co. v. Commissioners, 98 U. S. 541), the claim paid was for taxes and the treasurer had in his hands at the time a warrant which would have authorized him to seize the goods of the company to enforce collection. . . . Notwithstanding all this it was held that no recovery could be had because in fact no attempt had been made to put the warrant in force."

The subject of voluntary payments and the right of the payor to recover them back from the payee is elaborately discussed and the authorities reviewed by Chief Justice PAXSON in De la Cuesta v. Insurance Co., 136 Pa. 62. After quoting from the opinion in Christ Church Hospital v. Philadelphia, 24 Pa. 229, the chief justice says (p. 70): "We have here, succinctly stated, the principle upon which the doctrine rests in its application to a warrant for the collection of taxes. If the demand is illegal, and the party can save himself and his property in no other way, he may pay under protest and recover it back. But if other means are open to him by which he may prevent the sale of his property; if a day in court is accorded to him, he must resort to such means."

The same doctrine is announced and applied in Hospital v. Phila. Co., 24 Pa. 229; Phila. v. Cooke, 30 Pa. 56; McCrickart v. Pittsburg, 88 Pa. 133; Payne et al. v. Coudersport Borough School Dist., 168 Pa. 386.

Applying the doctrine of these cases to the case in hand, it is apparent that the payment made by the plaintiff in January, 1908, was voluntary and not compulsory. The collector made no threat to enforce payment or to execute his warrant, if one he had. As we have said, there was no duress against the person, nor was the money

paid under protest or with notice that it would be reclaimed. The payment, therefore, was entirely voluntary. As pointed out in the authorities cited, if the plaintiff company denied the legality of the road tax assessed on the 1907 valuation, its duty was to tender the amount lawfully due under the 1906 valuation, refuse to pay the balance demanded, and if necessary invoke the aid of a chancellor to restrain its collection just as it has successfully done in this proceeding as to the excess alleged to be yet due the township. This would have given the plaintiff its day in court and ample protection against payment of the taxes which it seeks to reclaim in this proceeding.

2. There is no suggestion of fraud in the case, and the next question is whether payment of the taxes was made under such mistake or ignorance of facts as entitled the plaintiff to have them refunded. To solve this question it is necessary to advert to the findings of fact by the referee and the court on which they base their conclusion, and the testimony adduced in support of the findings.

The learned referee in his ninth finding of fact says: "The plaintiff in ignorance of its rights and the facts with relation to the assessment of said road tax, and by mistake and inadvertence, thereupon paid to the said C. A. Hamill, collector, the sum of $1,722.56" and in his third conclusion of law: "The plaintiff company having in ignorance of the facts and by mistake paid the sum of $1,722.56 to C. A. Hamill, collector of said defendant township." In affirming the referee's report, the learned court says: "The referee has found that the excess was paid under a mistake of facts. The referee has applied, therefore, the general rule that money voluntarily paid under a mistake of facts can be recovered back, and we fail to discover any just reason why the rule should not prevail here."

The only testimony in support of these findings is that of C. D. Dyer, vice president of the plaintiff company. He testified that he was present at the hearing before

the county commissioners in June, 1907, of the company's appeal from the assessment and afterward received notice of the reduction by the commissioners from $500 to $400 per acre, that after the appeal to the common pleas he was notified of the further reduction of the valuation by that court to $330 per acre, and that he then instructed the superintendent of the plaintiff company to tender, in May, 1907, the amount based on the 1906 valuation. He then testifies as follows: "Q. What policy did your company adopt in 1907 with respect to the payment of its road tax for that year? A. We had decided to contest the collection of any taxes based on any valuation other than 1906, but based on the 1907 rate. Q. Do you remember when your company determined on that policy? A. Prior to May 31, 1907." He next testifies that early in January, 1908, "we received a notice . . . . calling on us to pay taxes based on the 1907 valuation, and it being early in the quarter and a great deal of that sort of stuff before us, I personally passed the bill over to the accounting department to pay according to the treasurer's notice, subject to some minor deductions which we thought were proper, and the amount was paid in that shape early in January, 1908. I think January 6th. . . . We discovered along shortly after that that we had acted contrary to the company's determined policy in the matter and called on the supervisors' treasurer . . . . for a refunding of the amount paid, excepting the amount based on the 1906 valuation and the 1907 rate of taxation. . . . Q. About how long after that (the payment) was it that you discovered the mistake? A. I think before the first of February." He says he was probably passing about forty or fifty matters the morning he passed the tax bill. "Q. Had you at that time any recollection that this was or was not the same amount that had been tendered by your company on May 31st previous? A. The only way that I can account for that was that all of our taxes in Fairfield township were included in one notice, and the thought of it which was called to my attention was the

chance to escape the penalty. The main factor in the case which we had determined on in the year escaped my attention. Q. At the time the bill was passed by you had you or not any recollection at that time of the position of the company had taken in May previous in regard to road taxes? A. No, sir." A letter written by Mr. Dyer for his company, dated January 11, 1908, shows that at that time the company had no intention of contesting the amount of road taxes on the ground taken in the present suit.

The findings of the court and the referee are based upon this testimony, and from it they have drawn their conclusion that the payment was made by mistake and "in ignorance of the plaintiff's rights and the facts with relation to the assessment." It is true that we do not reverse the findings of a master, approved by the court, unless plain error is pointed out. In this case, however, we think that the evidence wholly fails to sustain his conclusion. Mr. Dyer was the vice president of the company and acted for it in this matter. As appears by his testimony, he was informed of every step taken in regard to the assessment, the fixing of the rate, and the payment of the tax. He appeared before the county commissioners in June, 1907, and asked that the company's assessment made by the assessor be reduced. He received notice of the reduction from $500, the assessor's valuation, to $400 per acre made by the commissioners, and subsequently was notified of the reduction to $330 per acre made by the common pleas. He was fully advised of the 1906 valuation and instructed the proper officer to make a tender on May 31, 1907, of the amount of road taxes due under that valuation. He further knew that the company had prior to May 31, 1907, declared its "policy" to contest the collection of any taxes based on any valuation other than that of 1906. It is, therefore, manifest from his own testimony that Dyer knew the 1906 valuation and the millage fixed for 1907 by the supervisors, and hence was fully advised at the time he paid the taxes

and for several months prior thereto that $156.20, and not $2,091.14, was the amount legally due from the company for the taxes of 1907. In fact, he does not testify nor can any inference be drawn from any part of his testimony that in January, 1908, when he paid the taxes he was ignorant of any fact which would enable him to determine the amount of road taxes for 1907, legally due from and payable by the plaintiff company. Hence, there is no ground for the plaintiff company's contention, or the finding of the referee, that the payment of the taxes was made in ignorance of its rights and the facts with relation to the assessment of the road taxes.

Did Dyer make the payment on the 1907 valuation by reason of his failure to recall the 1906 valuation and the millage fixed by the supervisors on the first Monday of March, 1907? These are the material facts the ignorance of or mistake in which would warrant the refunding of the money paid. He does not so testify, and the facts disclosed by his testimony do not warrant any such conclusion. It will be observed that the amount of taxes due on the 1907 valuation was $2,091.14, while the taxes due on the 1906 valuation was $156.20. With the knowledge of the subject possessed by Dyer, it is idle to say that in view of the great difference between these two amounts that he did not know that he was paying on the 1907 and not the 1906 valuation. It offends reason to hold that a man of his intelligence and manifest business capacity would not at once detect the difference between what he knew was the correct amount of the taxes and a sum at least thirteen times greater. There might be some excuse for his failure of recollection as to these matters if all the steps taken in regard to the levy and assessment of the taxes prior to the payment had been attended to by another representative of the company, but as appears by his own testimony, he was the sole agent and representative of the company throughout the tax proceedings, directed the tender of the amount of taxes to be made in May, 1907, and hence knew the

legal amount of taxes due from the company at least seven months prior to the payment made in January, 1908.

Dyer does not testify, as will be observed from his testimony quoted above, that at the time he made the payment he did not recollect that the amount paid by him was the same amount that had been tendered by the company in May, 1907. The direct question was put to him but his answer was evasive. He testifies that when he received notice from the township treasurer to pay the taxes based on the 1907 valuation he personally passed the bill over to the accounting department to pay according to the treasurer's notice, and that "we discovered along shortly after that that we had acted contrary to the company's determined policy in the matter and called on the supervisors' treasurer . . . . for a refunding of the amount paid excepting the amount based on the 1906 valuation." It will be observed, therefore, that he does not say that the payment was made in ignorance or for want of recollection of the 1906 assessment or the amount of taxes due on said assessment and tendered at his direction to the collector, but that in making the payment he had acted contrary to the company's determined "policy" in the matter, and for that reason demanded the repayment of the amount. Had the learned referee and the court below critically examined Dyer's testimony they would have discovered that it utterly failed to support their finding that the payment was made in ignorance or mistake of any material fact which entitled the plaintiff to have the money refunded. It is wholly immaterial whether Dyer at the time he made the payment remembered the determined "policy" of his company or not, or what that "policy" was. That is not a material fact the ignorance or want of recollection of which can be made the basis for refunding the money paid. Hence, Dyer's testimony does not disclose his ignorance or mistake or want of recollection of any fact which would warrant the company in demanding the repayment of the taxes.

How or by whom the "policy" of the company in regard to the payment of the road taxes for 1907 was determined does not appear by Mr. Dyer's testimony. Being the vice president of the company and its representative in looking after the company's assessments and payment of taxes, it may reasonably be inferred that the "policy" of the company was determined by Mr. Dyer. If he could determine its "policy" in the first instance, he could change it, and the presumption is that in paying the taxes on the 1907 valuation with a knowledge of the facts that he intended to change it. This intention is confirmed by his letter of January 11, 1908, in which he protests against paying a penalty on the road taxes for the reasons he states, but in no way indicating that he intended to contest the defendants' claim for the road tax under the 1907 valuation. The evidence discloses that Mr. Dyer gave intelligent and prompt attention to his duties in regard to the levy and assessment of these taxes from the time he appealed to the commissioners until he invoked the assistance of the court to reduce the valuation, and it is, therefore, incredible that in paying the taxes it was not with a full knowledge and recollection of every material fact in the transaction.

If, however, the taxes were paid by reason of Dyer's negligence or inadvertence, it is no ground for relief. This is the settled rule, and Dyer's conduct, as appears by his own testimony, amounted to nothing more. Mistake as a basis for refunding taxes is a misapprehension or misunderstanding arising from ignorance, an essential prerequisite, and is distinguished from that inattention or absence of thought which are inherent in negligence, and is not such as results from inadvertence or negligence: 2 Pomeroy's Eq. Jur. (2d ed.), sec. 839.

We are of the opinion that it was plain and manifest error in the referee and the court below to find, as they did, that the payment of the road taxes by the plaintiff company in January, 1908, was made in ignorance of the facts or by mistake, and that the evidence in the case en-

tirely fails to support such finding. The plaintiff, therefore, has no right to have refunded the money which it paid on account of the taxes, and that part of the decree of the court below awarding its repayment must be reversed.

While we have passed on the merits of the plaintiff's claim, we are of the opinion that equity has no jurisdiction to compel the refunding of the money. The right of the plaintiff to maintain the bill for that purpose is not supported by Frick Coke Co. v. Mount Pleasant Twp., 222 Pa. 451. The question was not in that case. We held there, as we do here, that under the facts of the case equity will enjoin the collection of a road tax levied on a wrong valuation. We did not hold that it would compel the refunding of the tax if it had been paid. Here, the bill was filed, inter alia, to compel the repayment of the amount inadvertently and by mistake paid by the plaintiff company in excess of what was legally due and owing by it. The fact that it prayed for an accounting did not give the court jurisdiction to compel the refunding of the taxes erroneously paid. The decree does not direct an accounting, and none was necessary. The items were all on one side of the account. There was no relation of trust or agency alleged. Under these circumstances the remedy at law to compel the repayment of the taxes was entirely adequate: Safe Deposit & Trust Co. v. Mahaffey, 227 Pa. 48; Sprigg v. Com. Title Ins., etc., Co., 206 Pa. 548; Holland v. Hallahan, 211 Pa. 223.

If the bill had contained a prayer only for the refunding of the money it will be conceded that it would not lie and must be dismissed. It is contended, however, that as the bill would lie for an accounting, equity would thereby acquire jurisdiction, and it might decide all matters incidentally connected with the case so as to make a final determination of the subject. But we held in Graeff v. Felix, 200 Pa. 137, that this rule does not apply to a case where only some incidental matter is of equitable cognizance, and it is sought to draw in a main subject of

controversy which has a distinct and appropriate legal remedy of its own. An accounting was clearly an incidental matter and of no importance in the case. The principal subject in controversy, aside from the right to enjoin the collection of the remainder of the tax alleged to be due, was the right to recover the taxes which had been erroneously paid. There being a complete and adequate remedy at law to compel the defendant to refund the taxes, it is clear that equity had no jurisdiction. There is nothing in the bill which confers jurisdiction on equity to direct the repayment of the taxes.

The decree entered by the learned court below must be sustained so far as it enjoins the defendants from collecting $368.58, the balance of taxes alleged to be due, and dismissed so far as it directs the repayment to the plaintiff of the sum of $1,566.36, the difference between the amount of taxes legally due from the plaintiff and the sum paid by it to the defendants. As thus modified, the decree is affirmed.