Warren *v.* Philadelphia, Appellant.

Argued November 27, 1956.   Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*I. Jerome Stern*, Assistant City Solicitor, with him *David Berger*, City Solicitor, and *Levy Anderson*, First Deputy City Solicitor, for appellant.

*D. Arthur Magaziner*, with him *Paul Brandeis, Joseph Keough, Simon Lenson, Morris B. Levitt* and *Sterling, Magaziner, Stern & Levy*, for appellees.

ORDER PER CURIAM, December 10, 1956:

The decree of the court below is affirmed, the parties to bear their respective costs.

Opinion to be filed later.

———

OPINION BY MR. JUSTICE CHIDSEY, December 29, 1956:

An ordinance known as the "Philadelphia Rent Control Ordinance of 1955" which imposed temporary controls over rents and evictions in rental housing, expired on January 31, 1956. On January 26, 1956 the City Council passed an ordinance approved by the Mayor on January 31, 1956 as an amendment to the rent control ordinance of 1955, extending the imposition of controls to January 31, 1957. Claiming that no emergency existed in housing accommodations at the time of the enactment of the amending ordinance of 1956 justifying an extension of rent control, plaintiffs, individual taxpayers of the city, the Property Owners Association of Philadelphia, Inc. and five real estate boards filed a complaint in equity against the

defendant City of Philadelphia seeking to enjoin the enforcement of the rent control ordinance as amended, on the ground that it was unconstitutional and void. Defendant filed an answer and new matter to which plaintiffs filed a reply. Hearing was held before President Judge ALESSANDRONI sitting as chancellor who held that no emergency in housing existed, adjudged the amended ordinance invalid, arbitrary and void and restrained its enforcement. The City filed exceptions to the findings of fact, conclusions of law and decree nisi of the chancellor. These exceptions were dismissed by the court en banc which affirmed the decree nisi. This appeal followed.

In *Warren v. Philadelphia,* 382 Pa. 380, 115 A. 2d 218, taxpayers challenged on various ground the *power* of the City to enact the rent control ordinance of 1955 and the case came before us on motion for judgment on the pleadings. Speaking through Mr. Justice ARNOLD, we held that the City could, by ordinance, control rents and evictions to meet an emergency housing shortage affecting the public health, safety and welfare, as an exercise of its police power. We did not pass upon the merits of the controversy, and directed a procedendo. There was not sufficient time to undertake and complete a hearing in the court below on the merits, particularly the issue whether an emergency existed, before the expiration date of the 1955 ordinance and the matter became moot.

The question presented to the court below and now before us in the present appeal is whether the evidence adduced by the plaintiffs that no emergency housing shortage existed was sufficient to overcome the presumption of constitutionality and validity of the Rent Control Ordinance of January 31, 1956, or, stating it in another form, was such evidence sufficient to over-

come the presumption that the alleged emergency conditions relating to housing accommodations in the City of Philadelphia were correctly stated in the Ordinance. Both the chancellor and the court en banc in comprehensive and well-considered opinions recognized and fully considered the presumption of constitutionality and the respect that must ordinarily be given to legislative findings set forth in a statute or ordinance, but nevertheless determined that the ordinance in question could not be upheld. We are unanimously of the same opinion.

In *Gambone v. Commonwealth,* 375 Pa. 547, 101 A. 2d 634, this Court, speaking through Mr. Chief Justice STERN, said, p. 551, citing many cases in a footnote in support of the text: ". . . By a host of authorities, Federal and State alike, it has been held that a law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests the legislature may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. The question whether any particular statutory provision is so related to the public good and so reasonable in the means it prescribes as to justify the exercise of the police power, is one for the judgment, in the first instance, of the law-making branch of the government, but its final determination is for the courts.".

Since the removal of Federal emergency rent control, the City of Philadelphia acting locally has imposed such control. Rent control which impinges upon the constitutional rights of the owners of property

must be based upon a public exigency or emergency. The exercise of the police power in this regard has been sustained only where an emergency exists: See *Woods, Housing Expediter v. Cloyd W. Miller Co. et al.,* 333 U. S. 138; *Block, Trading Under the Name of Whites v. Hirsh,* 256 U. S. 135; *Marcus Brown Holding Company, Inc. v. Feldman et al.,* 256 U. S. 170. In *Scaccia v. Old Forge Borough,* 373 Pa. 161, 94 A. 2d 563, we stated that an emergency may be defined as ". . . a sudden or unexpected event which creates a temporarily dangerous condition usually necessitating immediate or quick action. . . .", and that ". . . Ordinary conditions or customarily existing conditions are not emergencies. . . .". Determinative of the question here involved is the *issue of fact* whether at the time of the adoption of the 1956 amendment to the 1955 ordinance a housing emergency existed in the City of Philadelphia.

The evidence introduced before the chancellor chiefly pertained to the vacancy rate of habitable dwellings. Joseph Turchi, Assistant Housing Coordinator of the City, testified to the effect that 5% is a normal and desirable vacancy rate. It was stipulated that Dorothy S. Montgomery, Executive Director of the Philadelphia Housing Association, if called as a witness, would testify that 5% is the normal vacancy rate but that 5% ". . . probably had never been the normal rate in Philadelphia", that she thought ". . . it would probably fall somewhere under five and above three—referring to the normal vacancy rate". There was evidence of rental history in the City when there was no rent control, beginning with 1920, indicating a vacancy rate over the years of substantially less than 3%. The survey of the Government Consulting Service, Institute of Local and State Government, University of Pennsylvania, which was engaged by the City Housing Rent Commis-

sion to make a survey of housing vacancies, as completed and transmitted to the Mayor and members of City Council in November of 1955, disclosed that the mean habitable vacancy rate for the City of Philadelphia, as of October, 1955, was 3.4% and that "The overall vacancy rate has increased from 1.3% in 1950 to 3.4% in 1955." There was also testimony that the vacancy rate had increased from October, 1955 to January, 1956. The chancellor adopted the foregoing statistics as findings of fact. He also found that rental conditions changed materially in the period from April, 1950 to January, 1956 and that no emergency in rental housing existed to justify the enactment of the amended ordinance of 1956. The City relied upon and emphasized the "legislative findings" contained in the 1955 ordinance which was enacted on January 31, 1955. The 1956 ordinance made no new findings but recited that the conditions relating to housing accommodations as set forth in the "legislative findings" of the 1955 ordinance, still prevail. The change in housing accommodations contained in the report of the City Housing Rent Commission which incorporated the governmental survey showing the increase in vacancy rate above mentioned was apparently ignored, although it was available to Council and to the Committee on Law and Government to whom the 1956 ordinance was referred for report.

Without reciting in detail all of the findings of fact by the Chancellor, we are satisfied that they were supported by credible evidence clearly establishing that no emergency housing shortage existed in Philadelphia which would have justified the enactment of the Rent Control Ordinance in question, and that the evidence was therefore sufficient to overcome the presumption of validity and justified the conclusion of law that the

amending ordinance of 1956 was invalid, arbitrary and void.

The final order heretofore entered on the above appeal is confirmed.