# TERRITORY OF HAWAII *v.* GLORIA K. AKASE.

## No. 4074.

ARGUED NOVEMBER 12, 1958.          DECIDED DECEMBER 19, 1958.

RICE, C. J., MARUMOTO, J., AND CIRCUIT JUDGE McKINLEY IN PLACE OF STAINBACK, J., DISQUALIFIED.

OPINION OF THE COURT BY MARUMOTO, J.

Appellant, Gloria K. Akase, was charged in an information filed in the circuit court with violation of the rent control ordinances of the City and County of Honolulu. The ordinances in question are Ordinance No. 1513, adopted in 1956, and Ordinance No. 1591, adopted in 1957. Ordinance No. 1591 extended Ordinance No. 1513 for two years with certain amendments. Appellant demurred to the information on the ground that the ordinances are "ultra vires, illegal, null and void in that the findings of fact recited in said ordinances affirmatively show that there is no emergency on which such legislation can be predicated." The circuit judge overruled the demurrer. The case is before this court on an interlocutory appeal from the order overruling the demurrer.

The sole question raised on this appeal is whether the board of supervisors, in adopting the ordinances in question, properly exercised the authority granted to it by the legislature to regulate rental conditions of places of abode. The appeal does not involve any constitutional question.

The board derives its authority from R.L.H. 1955, § 149-86 (4), which provides that it shall have power "To regulate the renting, subletting and rental conditions of property for places of abode by ordinance." It will be noted that the statute does not specify any condition under which the authority may be exercised. However, R.L.H. 1955, § 240-20, refers to "rent control ordinance declaring an emergency arising out of a housing shortage * * *, pursuant to the powers conferred by * * * subsection 4 of section 149-86, so long as such emergency continues."

The latter statute, having reference to the same subject matter as the former, is in pari materia with the former. Laws in pari materia are construed with reference to each other. (R.L.H. 1955, § 1-21.) If R.L.H. 1955, § 149-86 (4) is construed together with

R.L.H. 1955, § 240-20, it is evident that the authority of the board to regulate rental conditions of places of abode is an authority exercisable only during the continuance of an emergency arising out of a housing shortage.

Appellant contends that there was no emergency arising out of a housing shortage when the board adopted the ordinances in question. The contention is based on a very narrow meaning ascribed to the word "emergency" and to the phrase "housing shortage."

Appellant construes emergency to mean "a sudden or unexpected event which creates a temporarily dangerous condition usually necessitating immediate or quick action," as defined in *Scaccia* v. *Borough of Old Forge,* 373 Pa. 161, 94 A. (2d) 563, 564; or "an unforseen occurrence or combination of circumstances which calls for immediate action or remedy," as defined in Webster's New International Dictionary. Both definitions imply that an emergency is a situation of short duration. The rent control problem has existed for more than a decade. Appellant argues that a situation that has continued for so long a time cannot be considered an emergency.

However, there are other definitions of emergency. In *Jamouneau* v. *Harner,* 16 N. J. 500, 109 A. (2d) 640, 647, a case involving the New Jersey State Rental Control Act of 1953, the court stated that "An emergency is an unusual public exigency calling for the exercise of the police power to alleviate the common peril or need." In Webster it is stated that emergency also has the meaning of exigency, which implies "urgency or the pressure of necessity." In neither of these statements is there an implication that a situation long continued cannot be considered an emergency. In *Noyes* v. *Erie & Wyoming Farmers Co-op. Corporation,* 10 N. Y. S. (2d) 114, 121, in discussing the New York Milk Control Law, which was first enacted in 1933 and was continued by subsequent enactments in 1934, 1935 and 1936, each based upon a legislative declaration of continued emergency, the court stated: "A declaration of emergency by a legislative body under the recent legislative practice is usually a recognition that new conditions require new treatment under regulations that might be and frequently were long continued by successive enactments from time to time."

We do not think that an emergency is necessarily a temporary and fleeting situation. There is an emergency so long as the situation that gave rise to the remedial legislation remains unabated. This construction has the support of the statute itself, which gives validity to a rent control ordinance "so long as such emergency continues."

Appellant construes housing shortage to mean total absence of vacancy in housing accommodations. Under such construction, there is no housing shortage if there is even a single vacancy.

Among the findings upon which the board predicated Ordinance No. 1513 was the finding that there was a vacancy ratio of approximately 1.3 per cent with respect to housing accommodations in the City and County of Honolulu. Ordinance No. 1591 was based on a finding, among others, of a vacancy ratio of 1.2 per cent. A vacancy ratio of 1.3 per cent indicates 13 vacancies in 1,000 units; likewise, a vacancy ratio of 1.2 per cent indicates 12 vacancies in 1,000 units. Appellant argues that these findings show affirmatively that there was no housing shortage.

We think that appellant's construction of the phrase is unwarranted. Shortage is not a word which has an absolute meaning. Its meaning is relative. It denotes a deficiency in relation to some requirement or standard. The word "short" is defined in Webster as "Not coming up to a measure, standard, requirement or the like, or to something regarded as such." So, before we can say that there is, or is not, a housing shortage, there must be a determination of a standard in relation to which there is a deficiency or an excess.

The emergency that originally necessitated the regulation of rental conditions of places of abode was the unbalance between the supply of housing accommodations and the demand, which created a disparity in the bargaining positions of landlords and tenants. Such emergency ceases to exist when the increase in housing accommodations, or the decrease in the demand, restores the balance between supply and demand to a point where the tenants are placed in a reasonable bargaining position vis-a-vis the landlords. The standard in relation to which a deficiency or an excess is measured is the point at which such balance is restored.

Appellant asks us to say that the determination of the board

was wrong merely upon the reading of the findings in the ordinances. This we cannot do. True, the determination of the board is not conclusive. The findings, as well as the continued existence of the emergency, upon which the operation of the ordinances depends are subject to judicial inquiry. (*Block* v. *Hirsch,* 256 U. S. 135, 154; *Chastleton Corp.* v. *Sinclair,* 264 U. S. 543, 547.) However, the action of the board is entitled to great weight. It is presumed to be supported by facts known to the board "unless facts judicially known or proved preclude that possibility." (*South Carolina State Highway Department* v. *Barnwell Brothers,* 303 U. S. 177, 191.) In this case, there is no fact judicially known or proved from which we can say that the legislature was wrong.

Appellant cites *Warren* v. *City of Philadelphia,* 387 Pa. 362, 127 A. (2d) 703, and *Chastleton Corp.* v. *Sinclair, supra.*

In the *Warren* case, evidence was introduced indicating that over the years, beginning with 1920, when there was no rent control, the vacancy ratio in the city of Philadelphia was substantially less than 3 per cent; that the mean habitable rate as of October 1955 was 3.4 per cent; that the overall vacancy ratio had increased from 1.3 per cent in 1950 to 3.4 per cent in 1955; and that the vacancy ratio had increased from October 1955 to January 1956. Upon such evidence, the chancellor held that no emergency in rental housing existed to justify the enactment of the rent control ordinance of January 1956. The appellate court, in affirming the holding of the chancellor stated: "Without reciting in detail all of the findings of fact by the Chancellor, we are satisfied that they were supported by credible evidence clearly establishing that no emergency housing shortage existed in Philadelphia which would have justified the enactment of the Rent Control Ordinance in question, and that the evidence was therefore sufficient to overcome the presumption of validity and justified the conclusion of law that the amending ordinance of 1956 was invalid, arbitrary and void."

In the *Chastleton* case, the Supreme Court of the United States held that before ruling on the validity of legislative determination of continuing emergency, it was material to know the conditions in Washington at different dates in the past and remanded the case to the trial court, stating: "Obviously the facts should be accurately ascertained and carefully weighed, and this can be done

more conveniently in the Supreme Court of the District than here." As to the authority to review the legislative determination, the court stated: "We repeat what was stated in *Block* v. *Hirsch,* 256 U. S. 135, 154, as to the respect due to a declaration of this kind by the legislature so far as it relates to present facts. But even as to them a Court is not at liberty to shut its eyes to an obvious mistake, when the validity of the law depends upon the truth of what is declared. * * * And still more obviously so far as this declaration looks to the future it can be no more than prophecy and is liable to be controlled by events. A law depending upon the existence of an emergency or other certain state of facts to uphold it may cease to operate if the emergency ceases or the facts change even though valid when passed."

Upon the authority of the *Chastleton* case, appellant is entitled to a further proceeding in the circuit court to establish by competent evidence that the determination of the board as to the continued existence of emergency was without rational basis or that an emergency no longer exists because of subsequent alleviation of the rental housing situation. But we are without sufficient knowledge to take judicial notice that no emergency arising from a housing shortage existed at the times that the ordinances were adopted or that such emergency does not exist at the present time.

Affirmed.

*Harold C. Schnack* and *Ferdinand Schnack* (also on the briefs), for appellant.

*Frederick J. Titcomb,* Assistant Public Prosecutor (also on the brief), for appellee.