# Osterling, Appellant, *v.* Frick et al.  Executors.

*Contract—Architect—Delay in completion of work—Faults of others—Estoppel.*

1. One injured by the default of another will not be denied redress where the damages are shown approximately, although with less certainty because of injury of like character inflicted upon him by the acts of others.

2. While damages in such cases cannot be based on a mere guess or speculation, yet where the amount may be fairly estimated from the evidence, a recovery will be sustained even though such amount cannot be determined with entire accuracy.

3. The difficulty of separating damages resulting from independent causes, will not relieve the wrongdoer from liability, where there is data from which the extent of the injury caused by him can be ascertained with reasonable certainty.

4. Substantial justice is better than exact injustice.

5. Damages cannot be allowed exceeding what the proof shows was the loss caused by default, and the proof must be of a character to enable an approximate separation of such damages from those otherwise sustained.

6. In an action by an architect to recover for services, the owner is not estopped from claiming, as a set-off, damages for negligent delay, where it appears that the owner, by his conduct and statements, never condoned the delay but, on the contrary, frequently upbraided the architect for the delay, and did not discharge him because of the difficulty of making a change.

7. Nor in such case is the owner estopped from setting up delay as a defense because he settled with a general contractor without attempting to enforce a penalty provided in case the contractor did not complete the building within a stipulated time.

8. An estoppel can be claimed only by one who has acted in ignorance of the true state of facts, and who was without suitable means of informing himself of their existence.

*Appeals—Trial by the court without a jury—Findings of facts— Act of April 22, 1874, P. L. 109.*

9. In a case tried by the court without a jury, under the Act of April 22, 1874, P. L. 109, the appellate court is concluded by the trial court's findings of facts, when based on sufficient evidence,— that is, evidence sufficient to support a verdict.

Argued October 7, 1925. Appeal, No. 102, March T., 1925, by plaintiff, from judgment of C. P. Allegheny Co., Jan. T., 1921, No. 1580, for plaintiff, in case tried by the court without a jury, in suit of F. J. Osterling v. Adelaide H. C. Frick et al., executors of estate of H. C. Frick, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for balance alleged to be due for services of an architect. Before EVANS, J., without a jury.

The opinion of the Supreme Court states the facts.

Judgment for plaintiff for $109,406.75. Plaintiff appealed.

*Error assigned* was, inter alia, judgment, quoting bill of exception.

*Thomas Patterson,* of *Patterson, Crawford, Miller & Arensberg,* for appellant.—It seems clearly impossible, from all the evidence in the case, to come to any intelligent conclusion as to whether the particular default of the architect in question caused a delay of a week or a month or two months or any other period of time. Yet without any such evidence the court arbitrarily imposes upon the plaintiff an assessment of $40,000: Glasgow Shipowners' Co. v. Bacon, 139 Fed. 541; Chicago, B. & Q. R. R. v. Gelvin, 238 Fed. 14; Knowlton v. Ry., 115 Minn. 71; Priest v. Nichols, 116 Mass. 401; Forrest v. Buchanan, 203 Pa. 454; Lentz v. Choteau, 42 Pa. 435; Sipe v. R. R., 219 Pa. 210.

The owner by his conduct waived any claim to damages from delay in the construction of the building, due to alleged acts of the architect, and the defendants are equitably estopped from claiming such damages: Phila. v. Tripple, 230 Pa. 480; Pressy v. McCornack, 235 Pa. 443; Coryell v. Boro., 226 Pa. 103.

The credit or $5,161.04 allowed defendants for expenses in the auditing of accounts was not justified.

*George B. Gordon* and *John G. Buchanan*, for appellees.—The decisions in this Commonwealth are all in accord with the holding of the court below: Sulger v. Dennis, 2 Bin. 428; Little Schuylkill Nav., etc., Co. v. French, 81* Pa. 366; Gould v. McKenna, 86 Pa. 297; Schlitz Brewing Co. v. McCann, 118 Pa. 314; Rogers v. Davidson, 142 Pa. 436; Hartman v. Incline Plane Co., 159 Pa. 442; DeGrazia v. Piccardo, 15 Pa. Superior Ct. 107; Williams v. Phila., 208 Pa. 282; Pierce v. Coal Co., 40 Pa. Superior Ct. 566; Hoober v. Water Co., 43 Pa. Superior Ct. 262; Pierce v. Coal Co., 232 Pa. 165; Eckman v. Coal Co., 50 Pa. Superior Ct. 427; Macan v. Belting Co., 264 Pa. 384; Hughes v. Ireland, 74 Pa. Superior Ct. 518; McElroy v. Filby, 83 Pa. Superior Ct. 47; Hetzel v. R. R., 169 U. S. 26.

It goes without saying that the doctrine of waiver or estoppel can be asserted only on grounds of equity; and we believe that we have shown so strong a case of damage to Mr. Frick by Mr. Osterling's conduct that we may well call for proof of a strong case of damage to Mr. Osterling by Mr. Frick's conduct if the appellees are to be prevented from recovering damages: Miller & Sons Co. v. Hospital & Dispensary, 243 Pa. 502; Coryell v. Boro., 226 Pa. 103; Phila. v. Tripple, 230 Pa. 480; Pressy v. McCornack, 235 Pa. 443; Bryant v. Stillwell, 24 Pa. 314; White v. School Dist., 159 Pa. 201; Sturts v. Ziegler, 44 Pa. Superior Ct. 124; Hauck v. Mumma, 70 Pa. Superior Ct. 380; Com. v. Moltz, 10 Pa. 527; Desilver v. Ins. Co., 38 Pa. 130.

OPINION BY MR. JUSTICE WALLING, November 23, 1925:

F. J. Osterling brought this suit against the executors of the estate of the late H. C. Frick to recover for his services as architect in the erection of the Union Arcade building, Pittsburgh. Jury trial being waived, the case

was heard before the court and resulted in a judgment for plaintiff of $109,406.75, including interest, from which he brought this appeal. A careful examination of the voluminous record discloses no ground for reversal.

Plaintiff's employment was arranged largely by correspondence in which he undertook to perform the full services of an architect, to the owner's satisfaction, for three per cent of the cost of the building. Preliminary sketches and outline plans were approved by Frick in March, 1915. The shaft or main part of the building was to be six stories in height, above the basement, the first two stories to be of cut stone and the four above of terra cotta, later changed to cut stone. The plans also provided for three additional stories under a mansard or sloping roof, the entire frame work to be of structural steel. To expedite the construction, a contract for the steel was given the American Bridge Company, April 26, 1915, on a tonnage basis, and the general contract for the building was let to the George A. Fuller Company, of New York, June 24, 1915. This contract, drawn by plaintiff, provided for the completion of the building May 1, 1916. The Fuller Company let a contract to Samuel Holmes for the cut stone work of the first and second stories, which stated that the stone was to be obtained from a quarry owned by plaintiff's brother. A large amount of terra cotta was specified for the building, including the roof and interior finish. This was obtained from the Northwestern Terra Cotta Company of Chicago, by a subcontract made July 6, 1915. Other material, etc., was obtained through subcontracts with divers parties. By whomsoever the work was to be done, it was to be under the general supervision and control of the plaintiff, as architect.

The building was finished August 1, 1917, and thereafter plaintiff presented a bill of $321,325 for his services, less a credit of $40,000 paid October 1, 1915. Frick declined payment and, after his death (December 2,

1919), this suit was brought against his executors. The main question raised on the appeal is as to the validity of a $40,000 credit allowed defendants by the trial court as damages sustained by Frick on account of plaintiff's delay in the performance of his duty as architect. Much testimony was taken on this branch of the case and it was very ably and earnestly contended for appellant, both at bar and in the printed brief, that such finding was not supported by the evidence; but an examination of the record has led us to the opposite conclusion. In cases tried before the court under the Act of April 22, 1874, P. L. 109, we are concluded by the trial court's findings of the facts, when based on sufficient evidence (Sturdevant et al. v. Thomson, 280 Pa. 233; Stein v. W. H. Bradford Co., Inc., 278 Pa. 321; Gillespie et al. v. Hunt et al., 276 Pa. 119; New York & Pa. Co. v. N. Y. Cent. R. R., 267 Pa. 64), that is, evidence sufficient to support a verdict. In the instant case, the evidence showed it was plaintiff's duty not only to supply the design and erection plans but also enlarged detail plans and such information as to enable the contractor and sub-contractors to prepare shop drawings from which, when approved by the architect, the necessary material could be fabricated. The detail plans and necessary information should have been supplied within sixty days after the respective contracts were let. For example, detail plans for the structural steel should have been furnished before June 26, 1915, but were not until several months thereafter. As the structural steel work follows the foundations such undue delay greatly retarded the construction. In the general contract of June 24, 1915, Holmes is named as subcontractor for the cut stone, as above mentioned, and a copy of the contract with him was given plaintiff July 2, 1915, but he did not furnish the necessary detail plans therefor until late in October. Holmes, being unable to secure the desired stone from plaintiff's brother, obtained the same elsewhere, but was hampered by the architect's undue delay in furnishing

the detail plans and also by his persistent objections to the quality of the stone, which continued even after they were set in the building, until he was overruled by Frick. The undue delay of the architect in supplying the detail plans and necessary information for the structural steel and cut stone, to which we have referred, alone justified the $40,000 set-off, as the evidence shows that each month's delay in completion of the building occasioned a loss to the owner of over $20,000. There is a clause in the general contract to the effect that the detail plans for the terra cotta should be drawn by the terra cotta company, although that was normally the work of the architect, for which reason we have not relied upon architectural delay as to that feature of the case. Different parts of the construction were, however, so interdependent that a delay of one affected the others. For example, a delay of the steel construction necessarily delayed the installing of the cut stone and terra cotta. Furthermore, it takes a considerable time to fabricate material after the plans are complete. In many instances delays resulted from the architect's neglect to approve shop drawings; but, under the trial court's finding, the extent thereof was not sufficiently definite to warrant a conclusion thereon adverse to the plaintiff. The evidence points to other delays of the architect occurring at later periods, but what we have said sufficiently vindicates the $40,000 allowance for delay.

We have been discussing this branch of the case from the standpoint of defendants' evidence, but plaintiff strenuously denied every charge of delay on his part and submitted evidence in support of this denial, which, however, made an issue of fact for the trial court to pass upon. In addition to the direct evidence there were circumstances tending to support defendants' contention. The expert evidence was that plaintiff should have had at least ten assistants for a timely preparation of the work in question, whereas he only had three or four and their time was divided between this and other work.

There is also evidence that plaintiff admitted his lack of sufficient help, which fact may account for the many complaints that his plans came tardily, by piecemeal and only after repeated and urgent requests. Again, almost without exception, those connected with the building complained bitterly of the architect's delays and none more so than Frick. It is scarcely conceivable that such universal complaint could be groundless.

No one contends that the architect is chargeable with the entire fifteen months' delay, on the contrary, a considerable part thereof came from changes in the plans. For example, in November, 1915, when it became apparent that the building could not be finished by May 1, 1916, the architect's suggestion of two additional stories in the shaft of the building, making eight stories below the mansard roof, was adopted, and at other times, notably in March, 1916, further changes were made, including that of the interior to pure Gothic design. The time for completion was extended to August 1, 1916, and later to November 1st, of the same year. Some of the delay might possibly be attributable to causes not mentioned, but the finding of two months' delay and $40,000 damages, caused by plaintiff's default, is conservative, under the evidence. Defendants, representing Frick's estate, are not deprived of redress therefor because of further delay from other causes. One injured by the default of another will not be denied redress where his damages therefrom are shown approximately, although with less certainty because of injury of like character inflicted upon him by the acts of others. While damages in such case cannot be based on a mere guess or speculation, yet, where the amount may be fairly estimated from the evidence, a recovery will be sustained even though such amount cannot be determined with entire accuracy. As stated by Judge HENDERSON, in Hoober v. New Holland W. Co., 43 Pa. Superior Ct. 262, 266: "Where it is proved that damage has resulted from an injurious trespass and the only uncertainty is

as to the exact amount thereof such uncertainty is not ordinarily ground for refusing to allow any damage at all if the evidence furnish a basis from which a reasonable calculation can be made: 3 Sutherland on Damages, section 672; Hooper v. Story, 155 N. Y. 171"; and to like import is Hartman et al. v. Incline Plane Co., 159 Pa. 442; McElroy v. Filby, 83 Pa. Superior Ct. 47; De Grazia v. Piccardo, 15 Pa. Superior Ct. 107. In such case mathematical exactness is not required: Pierce v. Lehigh Valley Coal Co. (No. 1), 232 Pa. 165; Eckman v. Lehigh & Wilkes-Barre Coal Co., 50 Pa. Superior Ct. 427; and see Hetzel v. Baltimore & Ohio Railroad, 169 U. S. 27; Priest v. Nichols, 116 Mass. 401; Allison v. Chandler, 11 Mich. 542. In other words, the difficulty of separating the damages resulting from independent causes will not relieve a wrongdoer from liability (Gould v. McKenna, 86 Pa. 297, 303; 17 C. J. 759) where there is data from which the extent of the injury caused by him can be ascertained with reasonable certainty: Hughes v. Ireland, 74 Pa. Superior Ct. 518, 522. Data for an exact calculation is not necessary: Brewing Co. v. McCann, 118 Pa. 314; W. T. Adams Mach. Co. v. South States Lumber Co., 2 Ala. App. 471, 56 So. 826. It has been truly said that "Substantial justice is better than exact injustice." Of course, damages cannot be allowed exceeding what the proof shows was the loss caused by the default complained of, and the proof must be of a character to enable an approximate separation of such damages from those otherwise sustained. This principle is illustrated in case of the fouling of a stream, where the lower riparian owner may recover against a wrongdoer, although not the sole cause of the pollution: Pierce v. Lehigh Valley Coal Co. (No. 1), supra; Gallagher v. Kemmerer, 144 Pa. 509; Pierce v. Lehigh Valley Coal Co., 40 Pa. Superior Ct. 566. What the law requires is sufficient data from which the damages can be assessed with reasonable certainty and not merely upon conjecture: Macan v. Scandinavia Belting Co., 264 Pa. 384.

We are unable to agree with the contention that, because Frick suffered plaintiff to continue as architect, the defendants are estopped from claiming damages on account of the negligent manner in which he performed his work. Frick made frequent and very earnest complaints to the architect because of his great and numerous delays and went so far as to directly ask him to quit the job that another might take his place. This, plaintiff refused to do and, as the plans were his and largely in his possession, it was so difficult to make a change, without his consent, that he was suffered to continue; but the necessary elements of an estoppel are not here present. The correspondence certainly shows Frick was not silent when he should have spoken, neither was the architect misled for lack of information, nor would he suffer unjustly by a disclosure of the truth. See Com. v. Moltz, 10 Pa. 527, 531, 532. An estoppel can be claimed only by one who has acted in ignorance of the true state of facts, and who was without suitable means of informing himself of their existence: Tustin v. Phila. & R. C. & I. Co., 250 Pa. 425. He who gives timely notice of his rights and insists upon them cannot be charged with an estoppel. See Donnelly's Est., 272 Pa. 208. Frick never directly or inferentially surrendered his right to indemnity for the default of the architect, but frequently upbraided him for his neglect; hence, it cannot be said he waived any claim he might have against the plaintiff. See Coens v. Marousis, 275 Pa. 478. Cases where the owner's conduct has been held to warrant the finding of a waiver of the time limit in building contracts are not parallel to this. Neither are defendants estopped from setting up this defense because Frick settled with the general contractor without attempting to enforce the penalty provided for a failure to complete the building within the stipulated time. Plaintiff had no interest in that provision of the contract and is being charged only for his own default, unaffected by the alleged default of others.

The trial court gave defendants a credit or set-off of $5,161.04 for amounts paid in auditing certain accounts, which work admittedly should have been done by the architect. His objection to this is the claim that he was at all times ready and willing to audit the accounts in question; but that was disputed by evidence for the defense. Mr. Chubb, Frick's agent in charge, testified that plaintiff, although repeatedly requested, did not audit the accounts. As we understand the facts, the architect's letters, offering to audit the accounts, came after this work had been done, or largely done, by others. In any event the question of his readiness to audit the accounts was in dispute. As bearing upon this is the fact that at least from December, 1916, to the completion of the building, August, 1917, the relation of plaintiff with Frick and with his agents, also with the general contractor, was so strained that he was largely a nominal architect, and while under the general contract the Fuller Company was entitled to monthly payments on certificates of the architect, he refused during the time just stated to issue any certificates, claiming there was nothing due the contractor, and to keep the work going Frick was compelled to issue emergency certificates. So plaintiff's alleged refusal to audit the accounts finds support in his contention that there was nothing due to those presenting claims for audit.

Inasmuch as defendants have not appealed we are spared a consideration of some questions presented to the trial court. It is unfortunate that this case was not brought to trial until over seven years after the completion of the Union Arcade building, and not until death had sealed the lips of some most competent to speak and time had dimmed the memory of others once familiar with the facts; but the trial judge, assisted by able counsel, surmounted all obstacles and disposed of the case with such painstaking care and ability as to render our task comparatively easy.

The assignments of error are overruled and the judgment is affirmed.