Weinglass *v.* Gibson, Appellant.

Argued April 23, 1931. Before Frazer, C. J., Walling, Simpson, Kephart, Schaffer and Maxey, JJ.

*Barry H. Hepburn,* for appellant.—A mere notice of an intended breach of contract is not of itself a breach of contract; it may become so if acted on and accepted by the other party: Clavan v. Herman, 285 Pa. 120.

The court below erred in allowing the jury to guess at the loss of profits as damages where they were not capable of definite determination: Michelin T. Co. v. Schulz, 295 Pa. 141; Cornelius v. Lytle, 246 Pa. 205.

*James P. Gilliland,* with him *William A. Carr* and *Sidney L. Krauss,* for appellee.—The conduct of a party to a contract, which prevents or dispenses with performance by the adverse party, is equivalent to a waiver of the right to require performance: Greenlee v. West, 71 Pa. Superior Ct. 468; Zuck & Henry v. McClure, 98 Pa. 541; Barber Milling Co. v. Baking Co., 273 Pa. 90; Shamlian v. Waxman, 80 Pa. Superior Ct. 73.

There was sufficient testimony to justify the verdict of the jury that plaintiff was prepared to fulfill his contract: Delany v. Robinson, 2 Wharton 503.

There was sufficient evidence as to the damages suffered by plaintiff to justify the judgment of $5,000: Singer Mfg. Co. v. Christian, 211 Pa. 534; Wilson v. Wernway, 217 Pa. 82; Pittsburgh Gauge Co. v. Valve Co., 184 Pa. 36; Fidelity-Phila. Co. v. Simpson, 293 Pa. 577; Jessup & Moore Paper Co. v. Paper Co., 297 Pa. 483.

OPINION BY MR. JUSTICE SCHAFFER, May 25, 1931:

This is an action to recover damages for breach of a written contract between plaintiff and defendant, dated

November 22, 1927, under which the former was to produce at the latter's theatre a performance called "Settin' the Pace" during the week beginning December 26, 1927, and ending with the midnight performance January 1, 1928, with twenty-six persons in the cast. The agreement provided for the equal division between the parties of the gross receipts, less war tax.

The testimony discloses that after the contract was entered into defendant requested plaintiff to cancel or defer the date for the performance because he desired to substitute another production called "Africana" for Christmas week, which plaintiff refused to do, assigning as the reason that his cast would not agree to any postponement. It appeared on the trial that on December 20, 1927, the defendant entered into a contract with another producer for the presentation of "Africana" during the week commencing December 26th and this play was produced at the theatre during that week. The contract for this play was entered into by defendant about the time that he made inquiry of plaintiff by letter whether he was prepared to present "Settin' the Pace" and requesting that billing matter be sent. Upon receipt of this letter plaintiff wired defendant stating his willingness and readiness to produce his production according to contract and that he would at once send the billing matter. There was evidence that it was shipped. Its receipt was denied by defendant. On December 22, 1927, plaintiff became aware that an advertisement was appearing in a Philadelphia newspaper that "Africana" would be presented at defendant's theatre during Christmas week. He thereupon telegraphed defendant informing him that he had seen the advertisement, and that he had forwarded his billing matter, reiterating that he was ready and able to fulfill his contract and advising him that he would be held liable for its violation. Defendant replied to neither of plaintiff's telegrams.

Plaintiff did not bring his company from New York to Philadelphia and tender performance at defendant's

theatre and it is argued in the latter's behalf that plaintiff was bound to do so before he is in position to sue. Under the circumstances we think the position not well taken. Plaintiff knew that the other play was about to be staged and defendant did not advise him otherwise or in reply to his telegrams call upon him to bring his company to Philadelphia. Plaintiff knew, what would be manifest to every one, that two theatrical productions cannot be given on the same stage at the same time. Until he was advised by defendant that "Africana" would be withdrawn, he was not required by the law to bring his company and its paraphernalia to the stage door to make the gesture of willingness to perform, with the certainty that his offer would be refused. By contracting to exhibit the other production during the week when plaintiff's was to have appeared, defendant put it beyond his power to perform so far as plaintiff was concerned. This absolved plaintiff from tendering performance since performance or offer to perform by one party to a contract is excused when by the actions of the other it is manifest that it could not be accomplished: 2 Williston on Contracts, section 767; 13 C. J. 647-8; Feay v. Decamp, 15 S. & R. 227; Greenlee v. West, 71 Pa. Superior Ct. 468; Clavan v. Herman, 285 Pa. 120, 125.

A second question raised is: If it appeared that two of the actors whom plaintiff had agreed to produce were under contract to appear elsewhere at the same time they were to appear for plaintiff in defendant's theatre, can plaintiff claim against defendant a breach of the contract? Defendant did not put a refusal to stage plaintiff's production during the week covered by the contract on this ground and it does not convincingly appear that the two actors were essential to the cast or that they could not have been on hand. The testimony on this feature of the case, as it appears in the record, is very confusing. We conclude the question which went to the ability of plaintiff to produce his show was for the jury who had before them all the facts and explanations.

The main dispute before us is over the damages, it being the contention of defendant that nothing was shown which warranted their assessment. The verdict was for $7,335, which the court reduced to $5,000. It was testified that plaintiff's production had been fully organized and had given some successful performances in New York, that included in the cast were well-known vaudeville actors, that Christmas week is the most desirable and profitable week in the year for theatrical productions, that the capacity gross receipts at defendant's theatre during that week would have been from $17,000 to $18,000. Defendant did not offer testimony to establish that the receipts for the entertainment which he actually gave during that week were less than these figures. We think these facts afforded a reasonably fair basis for calculating plaintiff's loss from defendant's breach of his contract. While they are not as satisfactory as might be produced in other lines of endeavor outside the theatrical world, they are, it would seem, about all that can be shown where a breach of contract such as we are dealing with has occurred. To lay down a stricter basis for calculation would mean that it matters not how much he was in the wrong in failing to live up to his contracts, a theatre owner or operator could violate them with impunity, with the certainty in mind that however much his wrongful act had injured the other party, the latter could recover nothing because of the strictness required in the proofs of his damage. We, of course, recognize the rule that purely speculative damages or those based upon merely fanciful conceptions cannot be recovered. But here there was more than that. The factors used had in themselves an element of certainty at least sufficient to rest a common sense conclusion upon, which was not a mere guess. Where there is a basis in the evidence for a reasonable computation of the damages suffered considering the nature of the transaction, a verdict may be based thereon, though there may be involved some uncertainty about it: Singer Mfg. Co. v. Christian, 211 Pa.

534; Jessup & Moore Paper Co. v. Bryant Paper Co., 297 Pa. 483; Wilson v. Wernwag, 217 Pa. 82. The last case cited contains a full review of the authorities on this question up to the date of its decision. The courts of New York have sustained recoveries of damages in the case of theatrical contracts, as not too speculative in nature, similar to the case at bar, as an examination of Brady v. Erlanger, 188 App. Div. (N. Y.) 728, and Savery v. Ingersoll, 46 Hun. (N. Y.) 176, will disclose. "Substantial justice is better than exact injustice": Osterling v. Frick, 284 Pa. 397, 404.

The judgment is affirmed.