Scaccia, Appellant, *v.* Old Forge Borough.

Argued January 6, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Carl Carey,* with him *Joseph A. Mahon,* for appellant.

*Ernest D. Preate,* with him *J. Julius Levy,* for appellee.

OPINION BY MR. JUSTICE BELL, February 13, 1953:

The Borough of Old Forge had employed the plaintiff and two other policemen for a period of over two years. They had been appointed by the Burgess and were under Civil Service. The Borough Council, convinced that the financial condition of the Borough made economies necessary and that the police force could safely be reduced to two employes without affecting the efficiency of police protection in the Borough, passed an Ordinance in March, 1950, abolishing plaintiff's position as policeman or patrolman. The Ordinance was passed pursuant to and by virtue of the following provision of the Borough Code as amended* : "Borough councils may, subject to the civil service provisions of this act, if they be in effect at the time, appoint and remove, or suspend, or reduce in rank, one or more suitable persons, citizens of this Commonwealth as borough policemen . . . The burgess may appoint special policemen during an emergency in which the safety and welfare of the borough and the public is endangered."

The Burgess immediately thereafter declared that an emergency existed in the Borough of Old Forge due to Council's reduction of the police force and appointed plaintiff to serve as a special policeman. Plaintiff thereafter served daily as a policeman and brought an action in assumpsit for wages for a period of 18 months. The lower Court entered a nonsuit because no emergency was proved. From the order refusing to remove the nonsuit plaintiff appealed to this Court.

The Borough Code as amended clearly vests in the Borough Council, not in the Burgess, the right to appoint, remove, suspend or reduce Borough policemen.

---

* Act of July 10, 1947, P. L. 1621, Sec. 1125, 53 PS 13201.

The Borough Council, acting in good faith, has therefore the power and authority to reduce the number of police officers in the Borough by abolishing whatever police offices it decides are no longer needed. *Carey v. Altoona,* 339 Pa. 541, 16 A. 2d 1; *Simasek et al. v. McAdoo Borough, et al.,* 352 Pa. 306, 42 A. 2d 600; *McGuckin v. West Homestead Borough,* 360 Pa. 311, 62 A. 2d 23. Council possesses this power even though the officer was under Civil Service. Cf. *Leary v. Philadelphia,* 314 Pa. 458, 172 A. 459; *Essinger v. New Castle,* 275 Pa. 408, 119 A. 479; *Carey v. Altoona,* 339 Pa., supra.

Plaintiff claims that the Burgess had a right to appoint a special policeman during an emergency in which the safety and welfare of the Borough and the public was endangered. We agree with this statement; the only question is whether or not there was an emergency. The Burgess testified: "I appointed Joseph Scaccia a special policeman because in my opinion when the ordinance reduced the police force from three to two it created an emergency . . . I felt that the town could not be policed to the extent that the people of the town would receive the police protection of the police department with two men . . ."

It is difficult to define an emergency but as a generalization it is a sudden or unexpected event which creates a temporarily dangerous condition usually necessitating immediate or quick action. Cf. 29 C.J.S., Emergency, 760, 14 Words and Phrases, Emergency, 435, et seq., Webster's New International Dictionary. Ordinary conditions or customarily existing conditions are not emergencies. The Department of Internal Affairs of the Commonwealth of Pennsylvania in one of its official publications* stated: "All 50 cities of the Common-

---

* "Municipal Police In Pennsylvania—1952"—November 1952 issue of Commonwealth of Pennsylvania, Department of Internal Affairs Bulletin Vol. 20 No. 12 at page 10.

wealth maintain a police force. However, of the 940 Boroughs, 224 reported no police . . . of the 62 First Class Townships, 5 reported no police . . . and of the 1508 Second Class Townships, 1126 reported no police . . . In summation, of the 2214 municipalities [answering] . . . it was found that 1355 . . . had no municipal police protection. Furthermore, it is assumed that the greatest percentage of unreported municipalities have no police force, so that the actual figure of unprotected political subdivisions is even higher."

It will suffice to say that plaintiff failed to prove an emergency existed which would enable the Burgess of the Borough of Old Forge to appoint a special policeman under the "emergency" powers given him in the Borough Code.

Judgment affirmed.

