Burly Construction Corp. *v.* Commonwealth.

Argued March 2, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*William K. Wright,* with him *Keith A. Clark* and *Shumaker, Williams & Placey,* for appellant.

*John Stewart,* Assistant Attorney General, with him *J. Shane Creamer,* Attorney General, for appellee.

OPINION BY JUDGE MANDERINO, December 20, 1971:

This appeal arises from a contract dispute between the Burly Construction Company and the Department of Property and Supplies, Commonwealth of Pennsylvania. In May of 1967, the Commonwealth of Pennsylvania entered into a construction contract with the Burly Construction Corporation pursuant to which Burly was to construct a concrete gravity dam in Sholoha Falls, Pike County, Pennsylvania.

Subsequent to the signing of the contract, a dispute arose as to whether the contractor was required under the contract to use wood forms rather than steel forms in the construction of the bulk of the concrete dam. Burly did the work using wood forms and filed a claim against the Commonwealth requesting damages because

additional costs were incurred in the use of wood forms rather than steel forms. The Commonwealth rejected the validity of Burly's claim. Burly also made a claim for other items under the contract and the Commonwealth also made claims against Burly for certain delays, but none of these other claims are before us. Previous decisions involving these other claims have not been appealed by either Burly or the Commonwealth.

Burly's claim involving the use of wood forms was heard and a decision entered by the Department of Justice dismissing Burly's claim. It is this order which Burly now appeals to this Court.

The Commonwealth asks that Burly's appeal be quashed because it is barred by both his contractural agreement with the Commonwealth and by law. We do not agree and the motion to quash must be denied.

The contract between the parties specifically provided that Burly had the right to appeal from the decision and award of the Department of Justice ". . . as provided by law." The contract thus refers us to the law of the Commonwealth in order to determine whether Burly had the right to appeal. Under the contract, Burly had such a right if provided by law.

In contending that Burly did not have any right to appeal, the Commonwealth refers to Section 2408 of the Administrative Code of 1929 (Act of April 9, 1929, P. L. 177, 71 P.S. 638(j)). That Section, according to the Commonwealth, prohibits Burly's appeal because it states that a ". . . decision by the Department of Justice . . . shall be final." Section 2408 of the Administrative Code of 1929 is, however, no longer the controlling law.

Article V, Section 9, of the New Constitution adopted in April of 1968, provides in part as follows: ". . . there shall . . . be a right of appeal . . . from an administrative agency . . . to an appellate court, the

selection of such court to be as provided by law. . . ."

Following the adoption of the Constitutional provision, Section 47 of the Administrative Agency Law was enacted (Act of December 2, 1968, P. L. 354, 71 P.S. §1710.47). That Section provides that ". . . where an act of assembly expressly provides that there shall be no appeal from an adjudication of an agency . . . any person . . . who has a direct interest in such adjudication may nevertheless appeal the same in the manner provided . . ." by specified procedures. Section 47 of the Administrative Agency Law as amended (Act of December 2, 1968, P. L. 354, 71 P.S. §1710.47). Exclusive jurisdiction of appeals from final orders of state administrative agencies was given to the Commonwealth Court. Section 403 of the Appellate Court Jurisdiction Act (Act of July 31, 1970, P. L.     , Act No. 223, 17 P.S. 211.101 et seq. (1970)).

Article V, Section 9, of the New Constitution and the subsequently enacted enabling legislation make it clear that Burly was entitled to appeal the decision of the Department of Justice and the motion to quash must, therefore, be denied.

The Master, appointed by the Attorney General, found that after the signing of the contract a dispute arose concerning the interpretation of the contract. The dispute concerned whether or not under the contract an "F3 finish" was required on some of the concrete work involved in the project.

The Master's opinion makes it quite clear that the contractor was ordered to provide an "F3 finish" requiring wood forms and that such work was performed by Burly as ordered by the architect-engineer for the Commonwealth on the project. The Master also found that Burly was required to comply with the interpretation given to the contract by the architect-engineer and use an "F3 finish" on some of the work even though the interpretation of the requirement was under dis-

pute. This is not unusual since it allows work to proceed leaving disputes for later determination. The Master also found ". . . that the contractor did not contemplate the cost of the 'F3 finish' as required by the architect-engineer, and consequently the contractor's bid did not include such costs. . . ."

Unfortunately, the Master did not make any Finding as to whether the contract required an "F3 finish" and this, of course, was the crucial question.

The Master did not determine whether the original contract required an "F3 finish" because he determined that even if it was not required, Burly did not present sufficient evidence as to proper damages and, therefore, there was no need to determine the validity of the claim.

We disagree and conclude that the evidence presented by Burly before the Master was sufficient to sustain Burly's burden of proof as to damages.

We must, therefore, reverse and remand with instructions that a determination be made as to whether the original contract required the "F3 finish". If it did not, and if Burly properly pursued its claim, as later discussed, Burly is entitled to recover damages in the amount of $38,956.98.

Burly's position throughout the dispute has been that the original contract only required the use of steel forms and the order to use wood forms in order to provide an "F3 finish" involved additional costs not contemplated. The Master's findings sustained Burly in this contention. In order to prove its damages, Burly at the hearing introduced a "calculation of amount of form claims." Burly computed on a square foot unit cost the estimated cost of using steel forms as the contract provided (but which were never actually used because of the order of the architect-engineer) and subtracted the estimated cost of using steel forms from the estimated cost of using wood forms similarly cal-

culated. Burly then calculated the total amount of applicable square feet involved in the form work which was 29,313 square feet and multiplied the square footage by the increased difference in unit cost between wood forms and steel forms. Burly's submission, showing a breakdown of unit cost per square foot between steel forms and wood forms, showed a breakdown involving labor, material, equipment, insurance, fringes, taxes on labor, overhead, and a ten percent profit item.

The Commonwealth presented *no evidence* at the hearing to dispute the accuracy of Burly's calculations as to damages. There was *no evidence* that the 29,313 square feet involved in the use of wood forms was not correct. There was *no evidence* presented by the Commonwealth to contradict Burly's calculations concerning the relative cost of using steel forms versus wood forms. There was *no evidence* presented by the Commonwealth that the unit cost per square foot of steel forms versus wood forms was in error as to any particular item detailed by Burly on its "calculation of amount of form claims."

Thus the record did not involve any contradictory calculations by the parties. The Master did not reject the proof presented by Burly on the basis of credibility. The Master rejected the proof because he did not consider it legally sufficient. The Master stated that the "calculation of amount of form claims" presented by Burly was an "estimate" and not an "invoice." For this reason the Master did not consider that the proof was legally sufficient. We disagree with the legal conclusion of the Master.

The evidence which Burly presented was not a "guess." There is a difference between a "guess" of damages and an "estimate" of damages. Burly presented its "calculations" by a competent witness, William Casey, who served as Burly's Chief Engineer and Superintendent. There was no challenge made to

Casey's qualifications or background. The record thus contained detailed calculations on a "unit cost" basis presented by a competent witness. Nor was this method of presenting "cost" foreign or novel in the construction business. "Unit cost" calculations are the usual and customary method used in most large construction contracts in order to ascertain the "cost" of a particular portion of the work as distinguished from the cost of the entire construction project. In this case Burly had a contract for the construction of a dam for a single contract price in excess of one-half million dollars. There was no breakdown in the original bidding on a "cost" basis for a portion of the construction, as distinguished from "unit costs" for a construction of a portion of the dam or for that portion which involved "F3" concrete finishing. In arriving at its actual damages, Burly of course had no alternative but to use the "unit price" method so far as the cost of producing steel forms was concerned because the steel forms were never used, but the cost of using such forms had to be "estimated" on a unit price basis in order that the total dollar amount of using steel forms could be subtracted from the total dollar amount of using wood forms. Under such circumstances the use of the unit price for the wood forms in order to make the proper mathematical calculation seems not only reasonable but the most logical method of presentation.

Burly was required to present evidence which afforded a sufficient basis for estimating the damages with reasonable certainty. Restatement of Contracts, §331(1) (1932). The question of the sufficiency of evidence to establish damages has been considered in various contexts and almost without exception it has been held that although "guesses" and "mere speculations" are not permitted, "estimates" which have a basis in reason are legally sufficient. *See Smail v.*

*Flock,* 407 Pa. 148, 180 A. 2d 59 (1962) ; *Weinglass v. Gibson,* 304 Pa. 203, 155 A. 2d 439 (1931) ; *Osterling v. Frick,* 284 Pa. 397, 131 A. 250 (1925). In the *Osterling* case, *supra,* it was stated that ". . . while damages . . . cannot be based on a mere guess or speculation, yet, where the amount may be fairly estimated from the evidence, a recovery will be sustained even though such amount cannot be determined with entire accuracy." 284 Pa. 397, 131 A. 250, 251. In the *Weinglass* case, *supra,* the court stated ". . . where there is a basis in the evidence for a reasonable computation of the damages suffered considering the nature of the transaction, a verdict may be based thereon though there may be involved some uncertainty about it. . . ." 304 Pa. 203, 155 A. 439, 440.

In concluding that Burly's evidence was not legally sufficient because an "estimate" method was used rather than "invoices", the Master cited *Guise v. Bloom,* 65 Dauph. County Reports 183 (1953) and *Heindel v. Reiter,* 86 Dauph. County Reports 95 (1966). Neither of these cases supports the Master's conclusion that the evidence was legally insufficient. In the *Guise* case the court held that it was not necessary for the plaintiff to ". . . prove with particularity what labor and materials went into the work, and that the charges therefore were the reasonable, proper and usual charges. . . ." 65 Dauph. County Reports 183, 184. The contract in *Guise* was a cost plus contract and the court held that the plaintiff's evidence showing that ". . . he had paid in good faith under that contract for the labor and materials that went into the work . . ." was sufficient without showing with particularity the specifics as distinguished from the total payments for labor and material. 65 Dauph. County Reports 183, 185. We do not see how *Guise* is authority for considering unit price calculations as to damages insufficient. In the *Heindel* case, the court dismissed pre-

liminary objections which demanded that damages be
itemized with particularity rather than a lump sum.
In *Heindel* it was stated ". . . a lump sum statement
of the cost of repairs of items in an assumpsit action
is proper where the repairs have not been made and
the claim is only for the estimated cost. . . ." 86 Dauph.
County Reports 95 and 99. Neither the *Guise* nor the
*Heindel* case state or hold that proof of damages by a
competent witness using a unit cost calculation ap-
proach is legally insufficient.

The decision of the Department of Justice should
be reversed because of the sufficiency of the proof of
damages. There is, however, another problem in this
case which requires that we remand the case to the
Department of Justice for further consideration. In
its original claim, Burly relied on a section of the con-
tract called "Technical Specifications," pages 1-9, Sec-
tion 1.4, Sub-paragraph C, entitled "Claims". In the
Commonwealth's answer filed to Burly's claim and in
the Commonwealth's brief on this appeal, there appears
no doubt that the Commonwealth considers that same
section the relevant section to be considered in the de-
termination of Burly's claim. There seems to be no
dispute between the parties that the mentioned section
is the applicable section. The Master, however, in his
opinion stated ". . . the testimony and exhibits disclose
that the contractor did *not* comply with Section 5b of
the contract as set out . . ." in the Master's opinion.
The problem is that Section 5b which is "set out" in
the Master's opinion does not exist in the contract be-
tween the parties. In the Master's opinion there are
two paragraphs set out as 5b, but these paragraphs
are taken from different sections of the contract. The
"contractural provision" which is set out in the opinion
is clearly not a provision as it appeared in the original
contract, rather, it is a juxtaposition of two separate
parts of the contract. The Master held that Burly did

not comply with Section 5b which is a nonexistent provision as quoted by the Master. It may be that the reference to Section 5b was accidental or that some typographical error occurred. We are unable to ascertain from a reading of the Master's opinion whether this is what occurred or whether the Master in some substantive way misread the contract provisions in arriving at his conclusions. We do not wish to guess concerning the proper interpretation of the applicable contract provisions nor can we assume that the Master's reference in the opinion was simply a typographical error.

The order of the Department of Justice denying Burly's claim is reversed and the case is remanded to the Department for further consideration consistent with this opinion.