AMERICAN AIR FILTER COMPANY, INC., Appellant,

v.

Michael J. McNICHOL c/o John F. Scanlan, Inc. and John F. Scanlan, Inc.

No. 75–1263.

United States Court of Appeals, Third Circuit.

Argued Sept. 17, 1975.

Decided Dec. 16, 1975.

Michael M. Baylson, Duane, Morris & Heckscher, Philadelphia, Pa., for appellant.

John F. Ledwith, Schubert, Mallon, Walheim & DeCindis, Philadelphia, Pa., for appellees.

Before SEITZ, Chief Judge, and ROSENN and GARTH, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Plaintiff American Air Filter, Inc., (AAF) brought this suit against a former employee, Michael J. McNichol, and his new employer, John F. Scanlan, Inc., (Scanlan) seeking injunctive and monetary relief for an alleged breach of a restrictive covenant in an employment contract.[1] Judge Luongo denied plaintiff's motion for a preliminary injunction, 361 F.Supp. 908 (E.D.Pa.1973), and further injunctive relief was not sought. The damage case was tried to a jury which returned a verdict in favor of both defendants. Plaintiff appeals from the judgment entered against it by the trial court. We affirm.

AAF manufactures and distributes equipment to move, clean, and condition air. Air moving equipment manufactured by AAF and its competitors periodically requires replacement of an air filter. AAF also manufactures and distributes replacement air filters (RAF).

In early 1971, AAF changed its Philadelphia area distribution scheme for RAF's from independent distributors to employee salesmen. Defendant McNichol was hired by AAF as a salesman on February 1, 1972. Prior to commencing work, he signed a written employment agreement containing a covenant not to work for a competitor of AAF in the Philadelphia area for two years after leaving AAF's employ.[2] McNichol re-

---

1. Jurisdiction was based on diversity of citizenship, 28 U.S.C. § 1332.

2. The agreement provided in part:

 The EMPLOYEE agrees that for a period of two years after the termination of its [sic] employment with AAF, the EMPLOYEE will not engage either on its [sic] own behalf or on behalf of any person, firm, corporation or other entity, either directly or indirectly, in any competitive business located or carried on within the territory above described or take any action whatsoever which may disturb existing business relations of AAF with any person, firm or corporation with whom the employee came in contact as representative of AAF.

 The "territory" was described as certain Pennsylvania and New Jersey counties. Competitive business was defined as

mained at his job with AAF until January 19, 1973, when he voluntarily resigned and went to work for defendant Scanlan at a higher salary.

Scanlan is a local Philadelphia company which sells and distributes the products of various air handling equipment manufacturers. Among its products are filters which directly compete with AAF filters. Although McNichol while employed by Scanlan apparently solicited some customers previously solicited by him for AAF, there is no evidence that he actually made sales to them.

AAF eventually learned of McNichol's new employment. On April 3, 1973, AAF, through its counsel, forwarded to McNichol and Scanlan a copy of the employment agreement with AAF and a request that McNichol and Scanlan terminate their relationship. Until this time, no employee of Scanlan had knowledge of the restrictive covenant in McNichol's employment agreement with AAF. On the advice of counsel, McNichol· and Scanlan did not discontinue their relationship. AAF then instituted suit.

 On this appeal, plaintiff urges a number of issues: (1) the district court submitted the issue of reasonableness and validity of the restrictive covenant to the jury when it should have been decided by the court as a matter of law; (2) that the restrictive covenant is reasonable and valid and the district court should have so instructed the jury; (3) if the validity of the covenant is a jury issue, the court erroneously failed to put

the burden of proving unreasonableness on defendants;[3] (4) if the validity of the covenant is a jury issue, the district court erred in requiring AAF to prove that McNichol received specialized training and knowledge; and (5) the district court improperly restricted AAF on its proof of damages.[4]

We turn to the last issue first. It is our judgment that the district court properly excluded certain evidence (discussed below) proffered by the plaintiff and that plaintiff failed to establish that any damage resulted to it from McNichol's employment by Scanlan. That determination is sufficient to uphold the judgment of the district court and we need not reach plaintiff's other contentions.

 This action proceeded on a separate legal theory with respect to each of the two defendants. McNichol's alleged liability is predicated on breach of the restrictive covenant in the employment agreement. It is elementary that the "aim of the law in awarding compensatory damages for breach of contract is to put the injured party in the position he would have been in had there been full performance." *Maxwell v. Schaefer*, 381 Pa. 13, 112 A.2d 69, 73 (1955). To that end, damages are measured by the "losses caused and gains prevented by defendant's breach, to the extent they are in excess of any savings made possible by nonperformance." *In Re Kellett Aircraft Corp.*, 191 F.2d 231, 236 (3d Cir.

---

any business (whether comprising part or all of the business of a particular commercial enterprise) which either directly or indirectly solicits, serves, or caters to customers, potential or actual, of that part of AAF's business in which the EMPLOYEE was engaged
. . ...

3. Defendant contends, and at oral argument plaintiff's counsel conceded, that this issue is not properly before us, counsel having failed to make timely objection. Fed.R.Civ.P. 51.

4. An additional issue that affects all of the above contentions is that of governing law. We are, of course, bound to follow the law, including the choice of law rules, of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,*

313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Here, the employment agreement contains a provision that it "shall be construed . . . in accordance with the laws of the Commonwealth of Kentucky." A federal court sitting in Pennsylvania will follow a contractual choice of law provision. *Boase v. Lee Rubber & Tire Corp.,* 437 F.2d 527 (3d Cir. 1970). However, the contract does not offer any guidance on whether the reference is only to Kentucky substantive law, or to Kentucky choice of law rules as well. Counsel for the parties and the trial judge have agreed that there is no conflict between Kentucky and Pennsylvania law that is material to these issues. Consequently, we may draw upon the law of either state.

1951); Restatement of Contracts § 329. Applying those principles to the instant facts, the measure of AAF's damages is the profits it would have made on sales it could reasonably expect to have secured had McNichol not sold in breach of the agreement. *Kochenrath v. Christman,* 180 Ky. 799, 203 S.W. 738 (1918).[5]

The action against Scanlan is based on its retention of McNichol after it was informed that McNichol was in violation of his employment agreement. This action is one in tort for interference with contractual relations.[6] Courts are divided on an appropriate measure of damages for this tort, some limiting recovery to the contractual measure of damages, some using an amorphous "injuries proximately caused" analysis, and some allowing a whole range of tort damages, such as injury to reputation or mental suffering. *See* W. Prosser, *The Law of Torts* (4th ed. 1971) at 948–9; Annotation, 26 A.L.R.2d 1227, 1272. In this case, there are no injuries alleged other than pecuniary losses resulting from McNichol's employment with Scanlan. In these circumstances the measure of damages for interference with contractual relations will be identical to that for breach of contract.[7]

Plaintiff here sought to establish damages under three different theories: (1) an accounting for profits earned by Scanlan from sales by McNichol; (2) commissions earned by McNichol from his sales for Scanlan to former AAF customers; and (3) AAF's decrease in profits in the territory serviced by McNichol after he left AAF. The trial judge excluded evidence on the first two theories and we affirm that ruling.

■■■ An accounting is an essentially equitable remedy, the right to which arises generally from the defendant's possession of money or property which, because of some particular relationship between himself and the plaintiff, the defendant is obliged to surrender. *See Holland v. Hallahan,* 211 Pa. 223, 60 A. 735 (1905); *Shenango Furnace Co. v. Fairfield Tp.,* 229 Pa. 357, 78 A. 937, 943 (1911); *Crennell v. Fulton,* 241 Pa. 572, 88 A. 783, 785 (1913). *See generally,* 1 Pa.Law Enc., Account § 21 et seq., 1 Am.Jur.2d Accounts and Accounting § 44 et seq. Although a similar remedy was available from common law courts, an accounting has not served as a substitute for legal damages. *See* 1 Pa.Law Enc., *supra*; 1 Am.Jur.2d *supra*. The basic failing of the plaintiff's theory is that the defendant's profits are not necessarily equivalent to the plaintiff's losses. The defendant's profit margin may be higher than plaintiff's for any number of reasons—e. g., product more efficiently made or distributed. To compel defendant to disgorge these profits could give plaintiff a windfall and penalize the defendant, neither of which serves the purpose of contract damages, *supra*.[8]

**5.** Although the point is not raised on appeal, we note that the district court correctly refused to consider as damages any losses caused AAF merely because McNichol left their employ, e. g., costs of training McNichol or a replacement, or additional sales that McNichol would have generated for AAF by virtue of his year's experience as an RAF salesman. These items were correctly excluded because the contract did not obligate McNichol to remain in AAF's employ and these losses would have occurred regardless of any other employment he took.

**6.** We have some doubt whether the facts of this case establish Scanlan's liability for interference with contractual relations under either Pennsylvania or Kentucky law. *See Morgan's Home Equipment Corp. v. Martucci,* 390 Pa.

618, 136 A.2d 838 (1957); *Derby Road Building Co. v. Commonwealth,* Ky., 317 S.W.2d 891 (1958); *Brooks v. Patterson,* 234 Ky. 757, 29 S.W.2d 26 (1930). However, we assume *arguendo* that liability has been established.

**7.** Of course, Scanlan could be liable only for damages accruing after it had notice of the restrictive covenant.

**8.** Indeed, that a defendant's profits are not the measure of a contract plaintiff's losses was recognized by the very case on which plaintiff relies to support its argument. Plaintiff sued on a note which was the consideration in a contract and defendant counterclaimed for damages. The court stated:

Of course, the damages which defendant sustained should not be measured by the entire

For similar reasons, plaintiff's second theory fails. We see no relationship whatever between McNichol's earnings and AAF's losses. Compelling McNichol to give up his commissions would merely impose a penalty.

█ Only plaintiff's third theory is viable, and there its proof failed. Plaintiff introduced figures comparing sales in the territory serviced by McNichol for AAF for the eleven month period prior to and for the eleven months after McNichol's departure. The figures purported to show a loss of sales of approximately $10,000 in the latter period. Plaintiff's witness, however, refused to reveal the profit margin on RAF's. Plaintiff offered instead to have the witness testify as to AAF's overall profit percentage as reported in its annual report and then testify from his personal knowledge that the profit percentage for RAF's was greater than the overall company profit percentage. The trial judge excluded this testimony, stating that he would not allow the jury to "guesstimate" damages from the overall profit margin of a multinational corporation, part of whose profits are in manufacturing and part in sales.[9]

█ We affirm Judge Luongo's ruling. While we agree that "the quantum of proof required to establish the amount of damage is not as great as that required to establish the fact of damage," *Duo-Therm Div., Motor Wheel Corp. v. Sheergrain, Inc.,* 504 S.W.2d 689 (Ky.1973),[10] it is also elementary that purely speculative damages cannot be recovered. *See, e. g., Weinglass v. Gibson,* 304 Pa. 203,

155 A. 439 (1931). The evidence must establish a reasonably fair basis upon which a jury can calculate the plaintiff's loss. *See Weinglass, supra; Smail v. Flock,* 407 Pa. 148, 154, 180 A.2d 59, 62 (1962). The evidence offered by plaintiff would have only somewhat limited the range of the jury's speculation on damages. Moreover, the plaintiff had evidence available to it which could have made the determination more precise.

Since plaintiff failed in its proof of damages, the judgment of the district court will be affirmed.

---

profits which plaintiff made, but only by the profits of which defendant was deprived by plaintiff's violation of the contract. *Kochenrath v. Christman,* 180 Ky. 799, 203 S.W. 738, 740 (1918).

Nor do we read *Certified Laboratories of Texas, Inc. v. Rubinson,* 303 F.Supp. 1014 (E.D.Pa.1969), which plaintiff cites, to the contrary. In that case, Judge Lord required the defendants to account for their profits, "[b]ecause of the nature of their [wrongful] conduct." 303 F.Supp. at 1026. On the special facts of that case we understand Judge Lord to have used an accounting as a measure

of punitive damages because of the defendant's misconduct.

To the extent *National Chemsearch Corporation of New York v. Hanker,* 309 F.Supp. 1278, 1281 (D.D.C.1970), is contrary to our analysis, we reject it.

9. An additional weakness in plaintiff's case was that its witness admitted that profits on RAF's varied from sale to sale, depending on discounts, which were often given.

10. In addition, *see Blackburn v. Aetna Freight Lines, Inc.,* 368 F.2d 345, 347–8 (3d Cir. 1966).