Borough of Yeadon and Nicholas D'Alessandro, Appellants *v.* Thomas Montgomery et al., Appellees.

32

Submitted on Briefs, December 16, 1982, to Judges ROGERS, WILLIAMS, JR. and MACPHAIL, sitting as a panel of three.

*Joseph F. Battle,* for appellants.

*Alexander A. DiSanti, Richard, Brian, DiSanti & Hamilton,* for appellees.

OPINION BY JUDGE ROGERS, February 11, 1983:

This is the Borough of Yeadon's appeal from an order of the Court of Common Pleas of Delaware County, granting a prayer of a complaint in equity filed by three of the Borough's full-time police officers by directing the Borough to comply in the future with an arbitration award entered on December 28, 1977, and awarding the plaintiffs amounts determined to represent losses sustained by them as a result of the Borough's past failure to comply with the award.[1]

The pertinent provision of the 1977 award of the board of arbitrators is contained in its paragraph 7 and is as follows:

### OVERTIME

The Police request for a change in the overtime benefit is denied and the overtime benefits shall continue "as is." However, it is directed that the Borough give full time police officers first choice with respect to overtime work provided it is possible within the scheduling.

The parties agree that the Borough's alleged non-compliance with the mandate contained in the second sentence of this provision was the subject of an earlier equity action in the Delaware County Court of Common Pleas, docketed to No. 80-6890, which suit was discontinued on the basis of a settlement agreement which provides in part

2. Yeadon agrees to honor the Arbitration Award which gives full-time police officers first crack at overtime when scheduling permits.

....

4. Yeadon will use part-timers to fill in for emergency situations and when regulars are on vacation.

---

[1] No issue is now presented as to the propriety of the trial court hearing this case on the equity side.

The complaint in the instant matter contains the averment that the Borough has

> [d]espite repeated requests ... failed and refused to honor the terms of the said Settlement Agreement, in that the Borough has continued to use part-time officers in non-emergency situations and have [sic] not given the Plaintiff Full-time Police Officers first opportunity to serve overtime.

Hearings were conducted by the trial court in April and May, 1981, at which time the three named plaintiffs testified in support of their cause and the defense presented the testimony of Charles Trofe, chief of the Borough's police department; Nicholas D'Allesandro, then Mayor of the Borough; James Freeman, a Borough councilman; and Leon LaRosa, the Borough's manager during the period at issue. These defense witnesses did not dispute the testimony of the plaintiffs that on more than one hundred dates between June 25, 1980 and April 12, 1981, part-time police employees were engaged by the Borough and regular full-time employees were not first offered the opportunity to perform the duties for which the part-time employees were engaged.[2] The theory of the defense, reasserted on the occasion of this appeal, was that the Borough was permitted by the terms of the settlement agreement to engage part-time police employees during periods of emergency and that the whole of the period

---

[2] The unexplained use by the parties of the term "overtime" to describe hours worked by a part-time employee while acting in replacement of a disabled regular full-time officer is somewhat puzzling in the absence of any indication that the work hours so described were beyond the normal working day or were compensated at a higher rate. Of course, the parties to an agreement may use words in any way they choose and since no question is now raised as to whether these hours were overtime for the purposes of the settlement agreement we will accept their use of the term.

in question constituted an emergency within the intendment of the word as used in the settlement agreement because during this period as many as three full-time officers, of a total complement of about fifteen, had been granted extended leave due to illness and two additional full-time officers were absent from work for lesser periods due to injuries received while on duty.

The trial court rejected this defense; holding that the term "emergency" in the June 25, 1980, agreement was not intended to include the circumstance of scheduling difficulties created by the fact that some full-time officers were on extended leave due to disability. In this regard, the evidence indicates that each of the three officers on extended sick leave were unavailable for work at the time the parties entered into the settlement agreement. Therefore, the plaintiffs asserted, without some express indication, the parties would not have intended to describe the status quo existing at the time of the execution of the agreement as an emergency with the result of creating an obligation on the part of the Borough to give full-time officers overtime and at the same time relieving the Borough of the obligation under the circumstances then obtaining.

As further support for its conclusion, the court noted that in *Scaccia v. Old Forge Borough*, 373 Pa. 161, 94 A.2d 563 (1953), the Supreme Court held that a reduction in the number of police officers accomplished by the borough council was not an emergency within a provision of the Borough Code,[3] in its then form, which provided that "The burgess may appoint special policemen during an emergency in which the safety and welfare of the borough and the public is endangered." The Court in *Scaccia* defined

---

[3] Section 1125 of the Act of July 10, 1947, P.L. 1621.

an emergency in general terms as "a sudden or unexpected event which creates a temporarily dangerous condition usually necessitating immediate or quick action ... " and rejected the contention that a reduction in police officers accomplished by the legislature could be so characterized.

The Borough confines its appeal to two issues; whether the trial court's construction of the term emergency as used in the agreement was correct, and whether the evidence in support of the plaintiffs' damage claim was sufficient. On the first issue, the Borough makes reference to definitions of the word emergency, including that contained as a subordinate definitional entry in the third edition of Black's Law Dictionary, which arguably encompass a long term reduction in police personnel.[4] However, our scope of review in equity cases is quite narrow; the determinations of the chancellor will not be disturbed on appeal unless they are clearly erroneous as a matter of law or are in manifest abuse of the chancellor's sound discretion. *Quaker City Yacht Club v. Leon B. Williams*, 59 Pa. Commonwealth Ct. 256, 429 A.2d 1204 (1981). The trial court's construction here was entirely reasonable as was its reliance on the authority of *Scaccia*.

The Borough also argues that the evidence offered by the police officers to establish the amount of their damages was insufficient. On this score, the officers offered into evidence a typewritten multi-page document on each page of which appear six columns listing: (1) consecutive dates during the period at issue; (2) the identity, if any, of the part-time employee who was offered overtime work on the date indicated; (3)

---

[4] We note that the definitional entry referred to by the Borough seems to have been omitted from the most recent edition of the authority cited. *See* Black's Law Dictionary 469 (5th Ed. 1979).

the hours, if any, worked by the part-time employee; and, (4-6) by the placement of a check mark in any of the last three columns, the named plaintiff, if any, who was available to work during the hours for which a part-time police officer had been employed. The final page of the exhibit consists of arithmetic calculations by which each plaintiff's rate of pay is applied to the number of overtime hours earlier computed to produce an ad damnum.

This exhibit was admitted into evidence without objection. Further, it was stipulated at trial that the first three columns, having to do with the employment of part-time employees on specified dates and the hours worked by such employees on those dates, were directly compiled from official records maintained by the chief of police and were, therefore, accurate. Finally, it was further stipulated that the plaintiff full-time officers so indicated in the last three columns had not been offered overtime hours on the dates indicated.

Nevertheless, the Borough contends that this evidence was insufficient because it was not stipulated that the plaintiffs were "available" to perform their police duties on those occasions when part-time employees were engaged and because, on this point, the following testimony was elicited of one of the plaintiffs during the hearing conducted on April 24, 1981:[5]

Direct Examination by Plaintiffs' Counsel

Q: Where you put an X by a particular date, was that the same way [officer] Frazier did that? Does that indicate that you were available and willing to work on that date?

---

[5] We take to be a scrivener's error the reference in the Borough's written argument in this court to the notes of testimony taken April 9, 1981.

A: That's correct, sir. To the best of my knowledge.

Q: Cross-examine. Let me ask, was there any of these dates where you were working anywhere else?

A: No, not to the best of my knowledge.

Cross-examination by Borough's Counsel

Q: You say to the best of your knowledge. Is it possible that there are a couple of X's that don't belong here?

A: Anything is possible, sir. I am not infallible. I would say that it is very possible there is one or two days in here that there is a mistake. It would be totally my mistake.

Q: We are all human, of course. So, there is a possibility?

A: Yes.

In addition, the Borough refers to testimony which in combination with that just reproduced, it asserts, fails to exclude "the definite possibility" that on at least some of the dates for which damages have been granted the officers, although they would have accepted an offer of overtime hours with the police department had it been made, were otherwise gainfully employed.

These observations made, the Borough merely concludes with the assertion of error committed by the trial court. While it is not our role to supply the omitted analysis, we note that damages for breach of contract need not be proved with absolute precision but only by some method suited to the nature of the obligation at issue and predicated on

factors [which have] in themselves an element of certainty at least sufficient to rest a common sense conclusion upon, which was not a mere guess. Where there is a basis in the evidence for a reasonable computation of the damages suf-

fered considering the nature of the transaction, a verdict may be based thereon, though there may be involved some uncertainty about it [citations omitted].

*Weinglass v. Gibson,* 304 Pa. 203, 207, 155 A. 439, 441 (1931). *See also Osterling v. Frick,* 284 Pa. 397, 131 A. 250 (1925); *Burly Construction Corp. v. Commonwealth,* 4 Pa. Commonwealth Ct. 46, 284 A.2d 841 (1971). Moreover, mitigation of damages on account of compensation received by the plaintiff from other sources during the period for which damages are claimed is a matter for allegation and proof by the defendant. *Coates v. Allegheny Steel Co.,* 234 Pa. 199, 83 A. 77 (1912). The failure of the plaintiff to exclude in his case all possibility of mitigation, even if that were the state of the record, would not invalidate the claim. As we have indicated, apart from this issue now denominated by the parties as having to do with the "availability" of the plaintiffs, the parties stipulated to the verity and accuracy of the plaintiff's compilation.

Finally, to the extent, if any, that the testimony last set forth above can be fairly said to qualify or to be inconsistent with the earlier assertion of the witness that the plaintiffs' exhibit was accurate to the best of the witness' knowledge, only the weight to be given to the testimony could be affected. *See Commonwealth v. Whack,* 482 Pa. 137, 393 A.2d 417 (1978). The chancellor concluded his assessment of the evidence favorably to the plaintiff and, on this record, we may not overturn that determination. *See Commonwealth Trust Company, Admr. v. Szabo,* 391 Pa. 272, 276-77, 138 A.2d 85, 87 (1957) (chancellor's findings of fact have all the force and effect of a jury verdict); *Commonwealth v. National Gettysburg Battlefield Tower, Inc.,* 8 Pa. Commonwealth Ct. 231, 302 A.2d 886 (1973) (same).

Order affirmed.

40

ORDER

AND Now, this 11th day of February, 1983, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is hereby affirmed.

Judge DOYLE did not participate in the decision in this case.